In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2737

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TERRENCE BROWN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CR 1009-2—**Robert M. Dow, Jr.**, *Judge.*

ARGUED JULY 9, 2013—DECIDED JULY 30, 2013

Before EASTERBROOK, *Chief Judge*, and POSNER and
WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*.  A jury convicted the defendant
of having attempted to possess cocaine with the
intention of distributing it, 21 U.S.C. §§ 841(a)(1), 846,
and having "possesse[d]" a firearm "in furtherance of
any such crime," 18 U.S.C. § 924(c)(1)(A); see *United
States v. Castillo*, 406 F.3d 806, 811-12 (7th Cir. 2005)—that
is, a drug crime. He was sentenced to 60 months
for the gun crime, the sentence to run consecutively to

a 175-month sentence for the drug crime. The appeal challenges only the gun conviction.

The drug offense was an attempt to buy 10 kilograms of cocaine from (unbeknownst to the defendant) an undercover officer (so naturally the cocaine was fake). The attempt is criminal though it could not have led to the completed crime. *United States v. Sobrilski*, 127 F.3d 669, 674-75 (8th Cir. 1997); *United States v. Everett,* 700 F.2d 900, 904-08 (3d Cir. 1983); cf. *United States v. Stallworth*, 656 F.3d 721, 728 (7th Cir. 2011). The transaction took place in the defendant's SUV. The defendant, who remained in the driver's seat the entire time, passed a bag of cash back to his accomplice, who had moved from the first to the second row of seats to be next to the undercover officer. The accomplice gave the bag of money to the officer, who had placed the bag of fake cocaine on the floor of the vehicle upon entering. The officer left with the money. Other officers quickly appeared and arrested the defendant and his accomplice before the defendant could drive off.

The defendant's gun was found in a secret compartment large enough to hold substantial amounts of drugs and cash along with weapons, although the exact dimensions are unclear. The compartment was under the third row of seats. The gun, loaded and in working order, was the only object in the compartment and the compartment was closed.

Not only was the defendant at some distance from the compartment when the transaction took place, but the compartment could be opened only by following

a sequence of steps that would take about half a minute to complete: start the car, press the defrost button, push down the button to open a rear window, and place a magnet close to the ignition. The hope was that this involuted procedure for opening the compartment would thwart police searches. Also the compartment couldn't be opened unless the second row of seats was folded down and pushed forward—and remember that the accomplice, and the undercover officer who was posing as a seller, were sitting on those seats during the transaction.

Obviously the gun was stored in the compartment to facilitate the defendant's drug dealing. No reasonable jury would have believed the defendant's testimony that he had stored the gun there for personal self-defense because he had been beaten up and in the wake of that incident had placed the gun (which he already owned) in the secret compartment to make him "feel safe." What a reasonable jury could and the jury in this case doubtless did believe was that the compartment was a good place in which to store a gun because the defendant would be highly vulnerable when conducting a transaction involving drugs or money kept in the compartment. If he opened it to get money to buy drugs from a would-be seller, the seller might be tempted to grab all the money in the compartment and flee without giving over the drugs he'd agreed to sell.

But section 924(c)(1)(A) does not punish possessing a gun for the general purpose of mitigating dangers as they arise in one's career as a drug dealer; the posses-

sion must be in furtherance of a "drug trafficking crime," in this case the transaction with the undercover agent—a criminal attempt to purchase cocaine and the only drug crime mentioned. The defendant argues that the gun couldn't have furthered that transaction because the compartment was never opened and couldn't have been unless the occupants of the second row of seats had moved. Had the defendant doubted the bona fides of the putative seller of the cocaine (he testified he did not), he would have been likely, it could be argued, either to have taken the gun out of the compartment before the transaction took place or conducted the transaction with the compartment open and the gun therefore easier for him to get hold of quickly if need be.

The statutory term "in furtherance of" is unavoidably rather vague ("possesses" too, perhaps, though in this case the defendant does not deny possessing the gun when it was in the secret compartment), and the tendency of the courts has been to list factors that seem relevant and leave it to the trier of fact to apply them to the facts of the case at hand. The canonical factors, first enumerated in *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000), are "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." For subsequent invocations of these factors see, e.g., *United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005); *United*

*States v. Walker*, 657 F.3d 160, 172 (3d Cir. 2011); *United States v. Woodard*, 531 F.3d 1352, 1362 (11th Cir. 2008); *United States v. Snow*, 462 F.3d 55, 62 n. 6 (2d Cir. 2006). Rightly, none of the factors is deemed decisive. A lawfully purchased gun can be used in furtherance of a drug crime. Even a gun that is unloaded or not in working condition can be brandished, to intimidate a participant in a drug deal; used in so "harmless" a way the gun would still be facilitating a drug crime. It's also difficult to see why the type of gun matters or what the relevance is of the difference between a stolen weapon and one that while not stolen is possessed illegally (maybe because the defendant is a felon). And "accessibility," "proximity," and "circum-stances" are all open-ended terms.

It can be easier to determine "furtherance" by a holistic analysis than by dissecting the issue into parts; and so we'll eschew the conventional trudge through factors and simply ask whether the defendant's gun facilitated the drug crime. It did, as the jury found. True, the gun was not so easy to get to as it would have been in an open compartment in the front row of the SUV's seats, or on his person; but he was trading grabbing ease for a reduced risk that the police would find the gun in a search of the vehicle. True too that he was sitting in the driver's seat rather than within reaching distance of the compartment. But he had to be prepared to make a quick getaway; so again he was trading easy access to the gun for a reduced risk of being cap-tured. These tradeoffs are like the tradeoff a person makes who owns a gun for personal defense but locks

it in a safe in his home to prevent his children from getting at it. That doesn't mean the gun isn't for his personal defense. Likewise the tradeoffs our defendant made did not render his possession of the gun irrelevant to the drug transaction. If the purported seller of the drugs acted up during it, the defendant might be able to reach the gun in time to prevent serious trouble. Indeed if the seller snatched the bag of money and fled without giving the defendant's accomplice the drugs, the defendant might be able to grab the gun in time to give chase to the seller and interrupt his flight, whether by threat or shooting. Moreover, it would have been easier for the defendant to grab the gun had the undercover officer sat elsewhere than in the second row of seats; the defendant hadn't invited him to sit there. And probably the defendant intended after completion of the purchase of the drugs to place them in the secret compartment in order to reduce the likelihood that the police would find them or his accomplice steal them. The gun's presence in the compartment would further increase the security of the drugs.

The transaction was interrupted; and since the only drug offense the defendant was convicted of was an *attempt* to possess cocaine, it might seem that secreting the drugs in the compartment could not have been in furtherance of that crime. Not so; he may have been emboldened to agree to the transaction by knowledge that he had a secret place in which to store the drugs and that a loaded gun in the place of storage made them less likely to be snatched. If the presence of the gun made it likelier that the defendant would attempt the illegal drug purchase that turned out (the attempt, that

is) to be his undoing, his possession of the gun facilitated the attempted sale. And so a reasonable jury could find.

Speaking of "possession," we note in closing, and with approval, the parties' agreement that the defendant "possessed" the gun, which is another element of the section 924(c)(1)(A) offense and of other gun offenses (also drug offenses) as well, even though the gun was at a distance from him.

The concept of possession in criminal cases has undergone considerable elaboration in recent years, as when we read in a section 924(c) case decided by the District of Columbia Circuit that "possession, of course, can be either actual or constructive. Constructive possession requires evidence supporting the conclusion that the defendant had the ability to exercise knowing dominion and control over the items in question. Mere proximity to the item at the time of seizure is not enough; but proximity coupled with evidence of some other factor . . . is enough to sustain a guilty verdict." *United States v. Morris*, 977 F.2d 617, 619-20 (D.C. Cir. 1992) (citations and quotation marks omitted). Similar formulas for attempting to distinguish between "actual" and "constructive" possession appear in countless 924(c)(1)(A) cases, see, e.g., *United States v. Morris*, 576 F.3d 661, 666 (7th Cir. 2009); *United States v. Perez*, 663 F.3d 387, 392 (8th Cir. 2011); *United States v. King*, 632 F.3d 646, 651-52 (10th Cir. 2011), and in other gun (also drug) cases as well, such as cases involving possession of firearms by felons. See, e.g., *United States v. Griffin*, 684 F.3d 691, 695-97 (7th Cir. 2012).

The formulas do not, however, explain clearly the difference between "actual" and "constructive" possession, or the utility of drawing the distinction, or how "dominion" (a word no longer in common usage) differs from "control," or what "knowing" dominion and control means. A century ago the Supreme Court remarked that "both in common speech and in legal terminology, there is no word more ambiguous in its meaning than possession. It is interchangeably used to describe actual possession and constructive possession which often so shade into one another that it is difficult to say where one ends and the other begins." *National Safe Deposit Co. v. Stead*, 232 U.S. 58, 67 (1914). As aptly stated in Charles H. Whitebread & Ronald Stevens, "Constructive Possession in Narcotics Cases: To Have and Have Not," 58 *Va. L. Rev.* 751, 762 (1972), "the courts have lost sight of the basic question of whether the defendant did in fact possess the prohibited items and have applied the terminology of constructive possession as if it were a talisman to be used without reference to the interaction of the particular facts of each case." See also Wayne R. LaFave, *Criminal Law* § 6.1(e), pp. 327-29 (5th ed. 2010).

We don't deny the utility of the distinction—though it would be clearer, certainly to a jury, if the terms "actual possession" and "constructive possession" were replaced by "custody" and "possession"—when the physical possession is by the defendant's agent, as in the *National Safe Deposit* case, which involved the storage of a person's property in a safe-deposit box in a bank. 232 U.S. at 68. As explained in *United States v. Rawlings*, 341 F.3d 657, 658-59 (7th Cir. 2003), "'Possession,'

a concept much elaborated since its introduction into Western law by the Romans, has never just meant clasping something in your hands. The owner of an automobile possesses it even when it is parked in a garage and he is miles away. A tenant possesses the apartment he has rented even when he is away on a trip. A thief has custody of the goods he steals, but the owner retains possession. (That is, the thief does not have the *rights* of a possessor; he still has the liabilities, for example as a felon in possession . . . .) To decide whether a person . . . possesses a gun, therefore, it is not enough to ask whether the gun is in his hand or his pocket or even under his pillow or in his desk drawer. Had [the defendant] said to one of his coconspirators—'You hold this gun that I've bought but never touched, because I'm a felon and I don't want to be charged with being a felon in possession, if we are caught'—this would not negate his possession of it" (emphasis in original).

These are cases in which custody and possession are divided (for the owner of the property would certainly describe it as his possession), which strikes us, as we said, as a clearer articulation of the distinction than "actual" versus "constructive" possession. But neither in the D.C. Circuit's *Morris* case nor in the present case is the distinction, however worded, necessary to draw. Morris sold drugs in the living room of his small (one-bedroom) apartment, and two loaded guns were found under the cushions of the living room couch, where he was sitting when police unexpectedly appeared and arrested him. 977 F.2d at 619. Obviously the guns were

his possessions. He lived there by himself. (Compare the discussion of the complications created by joint residence in *United States v. Griffin*, *supra*, 684 F.3d at 695-97.) What could "constructive" as distinct from "actual" possession of the contents of one's own apartment mean when no one else resides in or even has access to the apartment? When sitting on his couch was Morris merely in "constructive" possession of it? If so does that mean that a couch can't be "actually" possessed, except maybe by moving men? Does one "actually possess" a gun only when one is holding it in one's hand? Does one lose possession of one's home when one is commuting to work?

Much as in *Morris*, our defendant's gun was found in his SUV (corresponding to Morris's small apartment), which he was sitting in. He possessed it, along with the other contents of the car (such as the items in his glove compartment and trunk), even though the gun was several feet away from him (though closer than the items in his trunk) and it would have taken him a half minute or so to grab hold of it. Once one recognizes that "possession" is not limited to holding something in one's hand, the occasions for invoking the term "constructive possession" diminish, as the parties in this case sensibly recognize.

AFFIRMED.