In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17–2963

CALVIN LINDSEY,

*Plaintiff-Appellant*,

*v.*

VINCE MACIAS, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-04069 — **Manish S. Shah**, *Judge*.

ARGUED SEPTEMBER 17, 2018 — DECIDED OCTOBER 23, 2018

Before EASTERBROOK, KANNE, and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. After the State of Illinois dismissed criminal charges against plaintiff-appellant Calvin Lindsey for unlawful possession of a weapon, he filed this civil action asserting claims for false arrest, excessive force, false imprisonment, and malicious prosecution under 42 U.S.C. § 1983 and state law assault and battery. At trial, the jury returned a unanimous defense verdict on all counts.

On appeal, Lindsey seeks to vacate the judgment for two reasons. First, he contends the district court erred in refusing to modify its jury instruction on "possession" to stress that "mere proximity" to a gun is insufficient. Second, he asserts the district court abused its discretion by denying the jurors' request for a copy of a potentially impeaching interrogatory answer.

Neither of Lindsey's arguments warrants reversal. Our precedent rejects a requirement that a possession instruction include language expressly disclaiming the sufficiency of "mere proximity," and Lindsey presents no persuasive reason to reconsider those holdings or reach a different result here. And the district court was well within its discretion in refusing to send into the jury room a document not admitted into evidence. Therefore, we affirm.

## I. BACKGROUND

### A. Arrest on April 28, 2012[1]

During the early morning hours of April 28, 2012, Lindsey and three female friends were drinking beer and watching television in a basement level apartment in Chicago. Suddenly, four Chicago police officers kicked in the door, grabbed Lindsey from behind, threw him to the floor, and arrested him. Never in his life had Lindsey used a gun, he never saw one on April 28, 2012, and he never went into his sister-in-law's first floor bedroom that night.

---

[1] While the facts summarized in this section are taken from the competing witness testimony presented during trial, on appeal we must view the facts "in the light most favorable to [the jury's] verdict." *Matthews v. Wisconsin Energy Corp., Inc.*, 642 F.3d 565, 567 (7th Cir. 2011).

That is how Lindsey tells it. The defendant-appellee police officers paint a strikingly different picture.

According to them, Officers Macias and Perez received an emergency call about a "male with a gun," and all four officers arrived on scene at about 3:35 a.m. An unidentified man standing on the porch directed the officers inside the building's first floor apartment, stating only, "He's in there." Upon entering, they encountered approximately ten people milling about a party, and one attendee informed Officer Gentile, "The man with the gun is in the back. He pointed it at my face."

When Officer Gentile looked up, a man saw him and fled into the first floor bedroom, slamming the door behind him. After announcing their presence and knocking, the officers opened the bedroom door and saw Lindsey sitting on a mattress next to one woman. Gentile found a gun on the bedroom floor, about two feet in front of Lindsey. None of the four officers ever saw the gun on Lindsey's person. Officer Macias arrested Lindsey and escorted him out.

### B. *Subsequent Litigation*

Lindsey was charged with unlawful possession of a weapon by a convicted felon. Three months later, after the state court suppressed the gun evidence, prosecutors dismissed the criminal case. Lindsey then filed this lawsuit, asserting violations of his constitutional rights and various tort claims. The jury trial in this civil case lasted four days.

#### 1. *The district court rejects Lindsey's modification to jury instruction on "possession."*

At the jury instruction conference, Lindsey's attorneys objected to the district court's proposed instruction regarding

"possession," which was based on Seventh Circuit Pattern Criminal Jury Instruction 4.13 and read in relevant part:

> A person possesses an object if he has the ability and intention to exercise direction or control over the object, either directly or through others. A person may possess an object even if he is not in physical contact with it and even if he does not own it.

Worried this pattern instruction might lead jurors to incorrectly conflate physical proximity to a gun with constructive possession, Lindsey's attorneys asked the district court to add the following language: "The mere proximity to the contraband is not enough to establish possession."

The district court denied Lindsey's request, explaining that the first sentence of the instruction already emphasized the requirement that a person have the ability and intention to exercise control over the object, so the jury would not think that "mere proximity" would be sufficient. Moreover, the district court preferred defining what constitutes possession, rather than what does not. Lindsey's attorneys were permitted to make this "mere proximity" point during their closing argument, which they did.

### 2. *The district court denies the jury's request for Officer Gentile's interrogatory answer.*

During trial, Lindsey's attorneys cross-examined Officer Gentile on his pre-trial answer to an interrogatory asking him to identify potential witnesses:

> [T]he women who were with Plaintiff Lindsey in the room where Plaintiff Lindsey was placed under arrest, whose names he does not know,

> may have knowledge of the events leading up
> to Plaintiff Lindsey being placed under arrest.

On the witness stand, however, Officer Gentile adamantly denied that multiple women had been in the bedroom, instead testifying that the reference to "women" in his interrogatory answer was a typographical error. The interrogatory answer was never moved or admitted into evidence, as Lindsey's counsel simply incorporated its substance into their cross-examination.

Later, during deliberations, the jury sent the district court the following note:

> May we see or have access to Gentile's interrogative [sic] response where he states/refers to 'women,' 'their,' & 'names,' (indicating plurals). If not, may we get clarification as to which room he is referring to?

Lindsey's counsel offered a copy of Gentile's interrogatory answer to send back, while defense counsel staunchly objected that the document was not in evidence.

The district court expressed concern that sending the interrogatory answer to the jury might "unnecessarily highlight one piece of evidence over another piece of evidence" or "cause deliberations to go down a road where they ask for more things that I can't give them, like testimony." So, the district court instructed the jury, "The answer to your request is that you must rely on your collective recollection of the evidence and testimony at the trial." While maintaining their objection to the district court's decision, Lindsey's attorneys did not object to the "wordsmithing" of the response.

The jury returned a unanimous verdict in favor of the defendants on all of Lindsey's claims, and the district court entered judgment accordingly.

## II. ANALYSIS

### A. *Jury Instruction on Possession*

First, Lindsey argues the district court erred in rejecting his proffered jury instruction language, emphasizing "mere proximity" to a gun is insufficient to establish constructive possession.

We review *de novo* whether a jury instruction accurately summarizes the law, but afford district courts "substantial discretion" in formulating a particular instruction's wording. *United States v. Edwards*, 869 F.3d 490, 496 (7th Cir. 2017). As long as the instruction is legally accurate, we reverse only if the wording misled the jury in a way that prejudiced the appellant. *United States v. McKnight*, 665 F.3d 786, 791 (7th Cir. 2011). A party is entitled to a specific jury instruction on his theory of the case if (1) the instruction is a correct statement of the law, (2) there is evidence supporting the theory, (3) that theory is not already part of the charge, and (4) a failure to provide the instruction would deny a fair trial. *United States v. Maldonado*, 893 F.3d 480, 487 (7th Cir. 2018).

In his brief, Lindsey highlights our decision in *United States v. Brown*, 724 F.3d 801 (7th Cir. 2013), which included the statement that "[m]ere proximity to the item at the time of seizure is not enough" to establish possession. *Id.* at 804. That is a correct statement of law, and one that has been well-established for quite some time. *See, e.g.*, *United States v. Chairez*, 33 F.3d 823, 825 (7th Cir. 1994); *United States v. Gates*,

491 F.2d 720, 721–22 (7th Cir. 1974).[2] But it does not follow that express language along the lines that "mere proximity to contraband is insufficient to establish constructive possession" must appear in every jury instruction on possession.

We confronted a similar argument in *United States v. Rice*, 995 F.2d 719 (7th Cir. 1993). There, the defendant was convicted of unlawful possession of a weapon and asserted the district court erred by failing to instruct the jury that "mere presence in the vicinity of a firearm, or mere knowledge of its physical location, does not constitute possession under the statute." *Id.* at 725. In affirming the defendant's conviction, we concluded that the jury instruction given "adequately covered" the defense's theory of no possession because it explained to the jury that constructive possession requires the "power and intention at a given time, to exercise dominion or control" over an object. *Id.* at 724–25.

Here, the district court's instruction already included similar language, informing the jury that constructive possession requires that a person have "the ability and intention to exercise direction or control over the object." This explained to the jury that more than physical proximity is required for possession. While Lindsey's proffered language was also a correct statement of law, as we noted in *Rice*, "district courts are not required to give alternative explanations of every term

---

[2] While the parties' briefs focus on federal case law regarding possession, the relevant inquiry at trial was whether the defendants had probable cause to arrest Lindsey for unlawful possession under Illinois law, namely 720 ILL. COMP. STAT. 5/24-1.1 (2012). Regardless, Illinois follows the same rule. *See, e.g.*, *People v. Deleon*, 33 N.E.3d 900, 905 (Ill. App. Ct. 2015) (holding that a defendant's "mere proximity to the gun in the car did not establish his possession of the gun").

defined in the instructions." 995 F.2d at 725. Given the district court's instruction and counsel's closing argument stressing the insufficiency of Lindsey's physical proximity to the gun, Lindsey's theory of the case was adequately presented to the jury. *Id.* at 726.

We have reached the same result in previous cases on this issue. *See, e.g.*, *United States v. Hendricks*, 319 F.3d 993, 1006 (7th Cir. 2003) (holding instruction on unlawful possession of a weapon sufficient despite lack of "mere presence" language); *United States v. Saunders*, 973 F.2d 1354, 1360–61 (7th Cir. 1992) (affirming cocaine possession conviction despite district court's rejection of a "mere proximity" instruction); *United States v. Durades*, 929 F.2d 1160, 1168 (7th Cir. 1991); (same).[3] Lindsey presents no persuasive reason why we should reconsider those holdings.

This was a civil trial, not a criminal prosecution for unlawful possession of a weapon. While Illinois law on possession was relevant to the defendants' affirmative defenses,[4] the jury was not tasked with finding whether Lindsey actually possessed the gun. Instead, the jury needed to assess whether probable cause existed to arrest Lindsey for unlawful possession, which required that the officers have "reasonably trustworthy information [that is] sufficient to warrant a prudent person" to believe that Lindsey had committed a crime.

---

[3] Illinois courts also have rejected the argument that a possession instruction must disclaim the sufficiency of "mere proximity" or "mere presence." *See, e.g.*, *People v. Freeman*, 609 N.E.2d 713, 719 (Ill. App. Ct. 1992); *People v. Stamps*, 438 N.E.2d 1282, 1297 (Ill. App. Ct. 1982).

[4] Probable cause to arrest is an absolute defense to any § 1983 claim for wrongful arrest, false imprisonment, or malicious prosecution. *See* *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006).

*Adams v. Williams*, 407 U.S. 143, 148 (1972). The district court's legally accurate instruction gave the jury the correct law needed to make this assessment. Further exposition on the legal intricacies of constructive possession was unnecessary for purposes of this case.

### B.  *Response to the Jury's Request for Officer Gentile's Interrogatory Answer*

We review a district court's response to a jury question during deliberations for abuse of discretion, considering "(1) whether the instructions as a whole fairly and adequately treat the issues; (2) whether the supplemental instruction is a correct statement of the law; and (3) whether the district court answered the jury's questions specifically." *Morgan v. City of Chicago*, 822 F.3d 317, 342 (7th Cir. 2016).

Lindsey claims the district court abused its discretion by refusing to provide the jurors with a copy of Officer Gentile's interrogatory answer when they asked to see it. Lindsey believes the answer was relevant to the jurors' assessment of Gentile's credibility as a witness. But the document was never moved or admitted into evidence. In fact, the district court could have abused its discretion had it sent a document not in evidence to the jury room. *See Baugh ex rel. Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 705 (7th Cir. 2013) ("The general rule is that materials not admitted into evidence simply should not be sent to the jury for use in its deliberations.").

To support his position, Lindsey points to this court's statement in *United States v. Sims*, 329 F.3d 937 (7th Cir. 2003), that a district court "has an obligation to dispel any confusion quickly and with concrete accuracy" in responding to jury questions. *Id.* at 943. Lindsey contends the district court failed

that obligation because it did not resolve the jury's "clearly indicated confusion" regarding Officer Gentile's testimony.

Lindsey's argument takes the statement in *Sims* out of context. The district court's obligation is to dispel jury confusion on the requirements of *the law*. In *Sims*, for example, the jury's confusion surrounded "the proper standard of intent for conspiracy to commit mail fraud." *Id.* By contrast, it is not the province of a trial judge to resolve jurors' confusion regarding the evidence, or (even worse) to reach beyond the domain of the record to give jurors additional information pertaining to witnesses' respective credibility.

In this case, providing the jury with the information it requested would have required the district court either to summarize the questions and answers from the cross examination of Officer Gentile, or transmit to a deliberating jury the text of a document not in evidence. The district court expressed understandable concern that either choice might improperly highlight certain evidence or encourage the jury to request other materials more difficult to provide. Such concerns are legitimate. *See, e.g.*, *United States v. Guy*, 924 F.2d 702, 708 (7th Cir. 1991) (recognizing concern about highlighting certain testimony by sending partial transcripts to jury room); *United States v. Howard*, 80 F.3d 1194, 1201–02 (7th Cir. 1996) (same).

When the district court initially charged the jurors, it informed them that trial transcripts would not be available and they "must rely on [their] collective memory of the testimony." The court's decision to adhere to that approach throughout deliberations was well within its discretion. *See United States v. White*, 582 F.3d 787, 805 (7th Cir. 2009) (no error in refusing jury request for trial transcript of a police

officer's testimony). We find no fault in the district court's refusal to provide the jury with a document not in evidence.

AFFIRMED.