**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 6, 2019[*]
Decided February 6, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 17-2557

| | |
|---|---|
| RODNEY HEARD,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | No. 14-CV-905 |
| NATHAN CHAPMAN, et al.,<br>    *Defendants-Appellees*. | Nancy J. Rosenstengel,<br>*Judge*. |

**O R D E R**

Rodney Heard, an Illinois inmate, argues that five prison officials violated the Eighth Amendment through their deliberate indifference to a lump in his jaw that turned out to be a benign tumor. The district court entered summary judgment in favor of three defendants, concluding that no reasonable jury could find that they were deliberately indifferent to Heard's serious medical needs. After a trial, a jury returned a verdict in favor of the two remaining defendants. Seeing no error in the entry of summary judgment or the jury verdict, we affirm.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

Heard began experiencing jaw pain in early 2011 while he was an inmate at Pontiac Correctional Center. In March of that year, Dr. J.W. Mitchell, the Pontiac dentist, diagnosed Heard as having a salivary duct infection. A round of antibiotics did not resolve the problem, so Dr. Mitchell referred Heard to an oral surgeon, who offered the same diagnosis. X-rays showed no abnormalities, but the radiologist opined that if a salivary gland stone were "still of clinical concern," then a CT scan "could also be performed." Dr. Mitchell did not order a CT scan.

In June 2011, Dr. Andrew Tilden, Pontiac's medical director, concurred in the salivary duct stone diagnosis, becoming the third physician to reach this conclusion. Dr. Tilden prescribed pain relievers and antibiotics and recommended a follow-up visit in two months. He also did not order a CT scan, believing that conservative treatment would resolve the issue within a few weeks. Heard testified that after the second round of antibiotics, his pain went away and did not return during the remainder of his time at Pontiac. Heard did not have the two-month follow-up appointment with Dr. Tilden because of his imminent transfer to another prison.

Upon Heard's fall 2011 transfer to Pinckneyville Correctional Center, the facility's dentist, Dr. Nathan Chapman, reviewed Heard's dental and medical records and determined that it was not necessary to examine him immediately. Within a week, however, Heard's mouth pain returned.

In August or September 2012, Heard told David Hess, his correctional counselor, that he had submitted four requests to see a dentist but received no response. Heard asked for a grievance form, but Hess did not give him one.

Heard was examined regularly at Pinckneyville's hypertension clinic by Dr. Vipin Shah, facility's medical director. During a November 2012 checkup, Dr. Shah noted some swelling in the lymph node on Heard's neck and prescribed an antibiotic. Despite the treatment, the painful lump persisted.

During Heard's biannual dental checkup in February 2013, Dr. Chapman noted several loose teeth and a hard knot on the floor of Heard's mouth. X-rays revealed a large cyst, which Dr. Chapman suspected might be ameloblastoma, a benign but aggressive tumor that can erode the jawbone if not treated. He submitted an urgent request for an oral surgeon to conduct a biopsy. The surgeon removed the tumor, several of Heard's teeth, and a portion of his jaw bone. (Heard later underwent multiple reconstructive surgeries.)

During Heard's recovery, Dr. Chapman changed the gauze in his mouth. Heard says that, despite his surgeon's instructions, he was not given additional gauze after his release from the infirmary, leading to the development of a painful dry socket. When he complained about the dry socket at his follow-up appointment a week later, Dr. Chapman treated it with a sterile gel foam, which Heard says "took all the pain away."

In August 2014, Heard filed a complaint against numerous prison officials, alleging deliberate indifference to his serious medical needs for the doctors' failure to timely diagnose and treat the tumor. At screening, *see* 28 U.S.C. § 1915A, the district court dismissed Heard's claim for "denial of access to grievances" against Hess on the basis that prison grievance procedures do not implicate the due process clause. The court permitted Heard to proceed on his Eighth Amendment deliberate-indifference claim against Chapman, Shah, Tilden, and Mitchell, and Hess.

All defendants eventually moved for summary judgment. The district court granted Chapman, Tilden, and Mitchell's motion, reasoning that Heard had not furnished evidence to support a finding that any of these defendants was deliberately indifferent to his medical needs.

Heard proceeded to a jury trial on his claim against Hess and Dr. Shah. Toward the end of the two-day trial, the district court instructed the jury on the law and specified what Heard must show to establish an Eighth Amendment violation:

> Plaintiff Rodney Heard claims he was injured and sustained damage and that Defendant[] … Dave Hess violated his rights under the Eighth Amendment … in the following [way]:
>
> ….
>
> Defendant David Hess acted with deliberate indifference in refusing to give Mr. Heard a grievance form to permit him to file a grievance about dental care despite having actual knowledge that Mr. Heard had received no response to four requests to see a dentist and knowing that Mr. Heard faced a substantial risk of serious harm if Hess did not provide Mr. Heard with a grievance form to utilize in obtaining necessary dental treatment….

Heard objected to this instruction on grounds that it was adopted from a state court instruction and was confusing and duplicative. In overruling his objection, the court explained that the instruction "giv[es] the jury an overview of what the case is about."

The jury returned a verdict in favor of both Dr. Shah and Hess.

On appeal, Heard challenges the district court's entry of summary judgment in favor of Drs. Tilden, Mitchell, and Chapman. We assume, as did the district court, that ameloblastoma is an objectively serious medical condition and thus focus on whether any of the defendants was deliberately indifferent to that condition. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Heard first argues that Dr. Tilden was deliberately indifferent by failing to conduct the two-month follow-up appointment at Pontiac. But Heard admitted in his deposition that his mouth pain went away after he took the antibiotics that Dr. Tilden prescribed, and the pain did not return until after his transfer to Pinckneyville. Because the treatment resolved Heard's complaint, no reasonable jury could find that Dr. Tilden "knew of a substantial risk of harm to [Heard] and disregarded the risk." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Next, Heard faults both Drs. Tilden and Mitchell for failing to order a CT scan following the first set of x-rays. But the Supreme Court has been clear that "the decision to forego diagnostic tests is 'a classic example of a matter for medical judgment.'" *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). For a delay in treatment to be actionable under the Eighth Amendment, a "plaintiff must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Petties v. Carter*, 936 F.3d 722, 730–31 (7th Cir. 2016) (en banc). As the district court noted, Heard offered no evidence to suggest that the tumor had been present but somehow missed in the x-rays taken at Pontiac in spring 2011 (or that it would have been detectible through a CT scan at that time). Nor is there any evidence that Heard's salivary-duct condition or swollen lymph node was in any way related to or indicative of ameloblastoma.

As for Dr. Chapman, Heard argues that the dentist acted with deliberate indifference when he did not call him in for an immediate examination after his transfer to Pinckneyville. Yet it is undisputed that Heard's mouth pain had been resolved by the time of his transfer (though it returned a week later). And Heard does not suggest that anything in his medical records should have alerted the dentist to the risk of ameloblastoma—or that Dr. Chapman was actually aware of such a risk, as required for a deliberate-indifference claim. *See Greeno*, 414 F.3d at 653.

Heard also contends that Dr. Chapman violated his Eighth Amendment rights by failing to provide him with additional gauze post-surgery, which led to a painful dry socket. We examine "the totality of the inmate's medical care" when considering

whether that care evidences deliberate indifference to his serious medical needs, and in this case, the overall treatment record cannot support such a finding. *Petties*, 936 F.3d at 728. The record shows that as soon as Dr. Chapman identified a possible problem with Heard's oral health, he ordered x-rays and then submitted an urgent request for an oral surgeon to perform a biopsy. He changed Heard's gauze post-surgery and immediately treated the dry socket when it was brought to his attention. Viewed in this context, Dr. Chapman's alleged failure to provide Heard with additional gauze post-surgery amounts to mere negligence or an "an isolated occasion… where [Heard] did not receive prompt treatment [from Dr. Chapman]," neither of which is insufficient to state a claim under the Eighth Amendment. *Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008) (citation omitted); *see also Petties*, 936 F.3d at 728.

Heard next argues that he is entitled to a new trial because the district court erroneously overruled his objection to the challenged jury instruction, which, Heard says, improperly referred to his screened-out due process claim. But Heard misapprehends the nature of the instruction: the instruction directly addressed what he must prove to establish an Eighth Amendment violation. (Hess's failure to provide Heard with a grievance form is relevant to this claim to the extent that it evinces deliberate indifference to his serious medical needs.) Further, Heard does not argue that the challenged instruction misstated the law or that the jury instructions, taken as a whole, misled the jury or prejudiced him in any way. Accordingly, he is not entitled to a new trial on this basis. *See Lindsey v. Macias*, 907 F.3d 517, 520 (7th Cir. 2018).

Finally, Heard argues that he is entitled to a new trial because the jury verdict was "contrary to the testimony and evidence presented." But by failing to move for judgment as a matter of law in the district court, Heard forfeited any challenge to the sufficiency of the evidence on appeal. *See* FED. R. CIV. P. 50; *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 823 (7th Cir. 2016). In any event, our review of the record convinces us that the evidence adduced at trial provided the jury a legally sufficient basis to render a verdict for Dr. Shah and Hess.

AFFIRMED