In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2023

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DERRICK W. JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 17-CR-72 — **William M. Conley**, *Judge.*

ARGUED NOVEMBER 6, 2018 — FEBRUARY 21, 2019

Before WOOD, *Chief Judge*, and EASTERBROOK and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge*. Derrick Johnson appeals his conviction for possession of a firearm in furtherance of a drug trafficking crime. Police arrested him at a Madison, Wisconsin, bar carrying five hydrocodone pills, two cell phones, gem packs containing marijuana residue, a plastic bag of antihistamine, and a loaded pistol. Johnson pled guilty to possession of a controlled substance with intent to deliver but went to

trial on the firearm charge. On appeal, Johnson claims the district court committed reversible error in three ways. First, he claims the jury instructions misstated the law and confused the jury. Second, he contends that the district court should not have admitted the government's proffered expert testimony. Lastly, Johnson argues the government presented insufficient evidence to support his conviction. We affirm.

## I. Background

A Madison, Wisconsin, police officer named Joseph Buccellato recognized Derrick Johnson outside of a campus bar on June 17, 2017. Johnson wore a jacket; a wardrobe choice that struck the officer as odd for a warm summer night. He suspected Johnson was armed. After confirming an outstanding warrant for Johnson's arrest, Buccellato and another officer confronted and attempted to apprehend him. Johnson wrestled free from the pair and made a short-lived escape into the bar where the officers ultimately arrested him. The officers searched Johnson and discovered a Crown Royal whiskey bag containing small plastic bags known as gem packs. Some gem packs remained unused, others contained marijuana residue, and five gem packs each contained a hydrocodone pill. The officers also found two cell phones and another plastic bag filled with powdered antihistamine. Data pulled from one of the cell phones revealed Facebook conversations in which Johnson appeared to arrange drug deals. Most significantly, the officers discovered a loaded pistol with a bullet in its chamber zipped up in Johnson's jacket pocket.

A grand jury indicted Johnson with one count of possessing hydrocodone with intent to distribute and one count of possessing a handgun in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C.

§ 924(c), respectively. Johnson pled guilty to possessing hydrocodone with intent to distribute but went to trial on the firearm charge.

Prior to trial, the government designated Bureau of Alcohol, Tobacco, and Firearms ("ATF") Special Agent Michael Aalto as an expert witness on drug distribution and trafficking. The government included Aalto's *curriculum vitae* with its expert testimony notice. Special Agent Aalto's law enforcement career spanned more than twenty years. He spent more than half of his time with the ATF, where he served undercover in the drug trade and worked with informants. The expert witness notification explained that Aalto would offer his opinion on the habits, customs, and practices of drug dealers. Specifically, Aalto would testify about the different items discovered in Johnson's possession during his arrest and their relationship to drug dealing. According to the government, this testimony would help the jury understand how Johnson used the pistol "in furtherance of" the drug crime. The government also identified Buccellato as an expert witness.

Johnson moved *in limine* to exclude the testimony of both Aalto and Buccellato as irrelevant. Johnson argued that because he pled guilty to possession with intent to distribute, the government no longer needed to prove he dealt drugs. Alternatively, Johnson contended that the district court should weigh and exclude Aalto's and Buccellato's testimony under Federal Rule of Evidence 702.

The district court held a hearing and, relying on our cases describing such testimony as helpful and relevant, rejected Johnson's Rule 702 argument. The court also noted that expert testimony about why drug dealers possess guns and how

they use them provides helpful information for lay jurors unfamiliar with the clandestine narcotics world and accordingly rejected Johnson's relevance argument. The court explained that testimony concerning the other items Buccellato recovered from Johnson during the arrest could provide context for Johnson's firearm possession.

At trial, Aalto testified to a variety of factors. Based on the Facebook conversation data taken from one of Johnson's phones, Aalto concluded that Johnson made an appointment to sell Xanax two and a half hours before his arrest. Aalto explained that drug dealers commonly use gem packs to package drugs for sale. The government asked Aalto about the relationship between drugs and guns. He observed that due to drug dealing's dangerous nature, guns and drugs go hand-in-hand and concluded "[w]here there's guns, there's drugs, and where there's drugs, there's guns." On cross-examination by Johnson's counsel, Aalto walked back his broad assertion, noting that drugs and guns go together not always, but "[m]ost of the time."

As trial closed, the district court considered the parties' proposed jury instructions. The government asked the court to supplement the pattern jury instruction explaining the "in furtherance of" element with factors identified in *United States v. Duran*, 407 F.3d 828, 845 (7th Cir. 2005). Conversely, Johnson requested that the district court borrow a jury instruction used in a previous case which included a dictionary definition of the word "facilitate." Over Johnson's objection, the district court ultimately administered a pattern-based jury instruction but added both the dictionary definition of "facilitate" and the *Duran* factors the court deemed relevant to the case.

The court omitted *Duran* factors related to the gun's legal status because it previously granted the government's motion *in limine* to exclude evidence about whether Johnson legally possessed the pistol.

In the following presentation of the jury instruction, the bolded text highlights the added *Duran* factors. Johnson's requested dictionary language defining "facilitate" is italicized:

> As used in the second element of Count 2, a person possesses a firearm in furtherance of a drug trafficking crime if the firearm furthers, advances, moves forward or facilitates the crime. The mere presence of a firearm at the scene of a drug trafficking crime is not enough to establish that the firearm was possessed in furtherance of the crime. There must be some additional connection between the firearm and the crime. In making this determination, you should consider all of the evidence, including: **the type of drug activity that is being conducted; the type, value and amount of drugs; the accessibility of the firearm; the type of the firearm; whether the firearm is loaded; the proximity of the firearm to drugs or drug profits; the time and circumstances under which the gun is found**; *and whether the firearm makes the crime possible, easier to commit, or more likely to succeed.* While these factors or any other factor you deem important may be useful, they are not to be applied rigidly or with equal weight. The weight, if any, you give these or other factors is up to you. No factor or combination of factors is dispositive. Instead, you are to be guided primarily by common sense in deciding if "the firearm furthered, advanced, moved forward or facilitated the crime."

(R. 72 at 6).

The jury convicted Johnson. He subsequently challenged the sufficiency of the evidence under Federal Rule of Criminal Procedure 29, which the district court denied. He appealed.

## II. ANALYSIS

Johnson argues the district court erred in three ways. First, he contends the court administered jury instructions that misstated the law and confused the jury. Second, he challenges the admission of the government's expert witness testimony. Third, Johnson maintains that insufficient evidence supported his conviction.

### A. *The District Court Administered Adequate Jury Instructions*

Johnson argues that the jury instructions misstated the law and confused the jury. He objects to the instructions because the district court included the *Duran* factors in the "in furtherance of" instruction and placed his proposed dictionary definition language among the factors.

We review whether a jury instruction accurately states the law *de novo*. *United States v. DiSantis*, 565 F.3d 354, 359 (7th Cir. 2009). District courts can improve pattern jury instruction language or "start from scratch." *United States v. Edwards*, 869 F.3d 490, 500 (7th Cir. 2017). We give the district court discretion on precise wording "so long as the final result, read as a whole, completely and correctly states the law." *DiSantis*, 565 F.3d at 359 (quoting *United States v. Gibson*, 530 F.3d 606, 609 (7th Cir. 2008).

The jury convicted Johnson of possessing a firearm in furtherance of a drug crime. 18 U.S.C. § 924(c). The statute provides that "[a]ny person who, during and in relation to any crime of violence or drug trafficking crime … in furtherance

of any such crime, possesses a firearm, shall … be sentenced to a term of imprisonment of not less than 5 years[.]" § 924(c)(1)(A)(i).

We previously examined the statute's "in furtherance of" language and determined it requires that the weapon "further, advance, move forward, promote or facilitate the drug-trafficking crime." *Duran*, 407 F.3d at 840 (citing *United States v. Castillo*, 406 F.3d 806 (7th Cir. 2005)). The recurring factual inquiry in cases where an arrested drug dealer possesses (but does not brandish) a firearm centers on the dealer's purpose for carrying the weapon. In *Duran*, we recognized the difficulty in distinguishing between lawful carrying for personal protection and carrying to protect a drug stash. *Duran*, 407 F.3d at 840.

To help the juries, we borrowed a list of factors articulated by the Fifth Circuit including, "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id*. (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414–15 (5th Cir.), modified on denial of rehearing, 226 F.3d 651 (5th Cir. 2000)). As we noted in *Duran*, these factors are not exhaustive, nor are they necessary. 407 F.3d at 840. Overall, we emphasize common sense as the jury's guide. *Id*.

Here, Johnson raises two main objections to the instruction. First, he believes the instruction's arrangement led the jury to believe it could discard part of the legal standard. Specifically, the district court added the dictionary language de-

fining "facilitate" to the end of the listed *Duran* factors. Because the instruction described the *Duran* factors as optional, Johnson believes the jury could have interpreted the instruction to mean that it was optional to find that the gun "facilitated" the drug crime. And because "facilitate" is one of the words used to describe "furthered," the jury could have thought that it was optional to find that Johnson possessed the gun "in furtherance of" his drug dealing. Second, Johnson argues that the district court abused its discretion by including the *Duran* factors in the instruction. Johnson complains that the court only included factors detrimental to his case and excluded potentially helpful factors. Moreover, he claims that even though the commentary to the pattern instruction recommends providing jurors with the *Duran* factors, providing them in this case distracted the jury from its primary task.

We disagree. The administered jury instruction included the critical *Castillo* standard twice—at the beginning and end. Although the district court placed the dictionary language prior to a sentence advising the jury to give the *Duran* factors the weight—if any—it deemed appropriate, the instruction definitively and properly concluded with *Castillo*'s standard. The instruction effectively gave the jury its task, listed considerations to weigh in its discretion, and then iterated the proper legal standard. The instruction clearly informed the jury that it must ultimately determine whether "the firearm furthered, advanced, moved forward or facilitated the crime." *Castillo*, 406 F.3d at 821. By bookending the non-patterned language with the *Castillo* standard, the instruction sufficiently informed the jury of its task of determining whether he possessed the firearm in furtherance of his drug dealing.

We similarly disagree with Johnson's argument that the district court abused its discretion by including the *Duran* factors or prejudiced him by including only a few. We previously explained that not all the *Duran* factors are equally helpful in a given situation. *United States v. Brown*, 724 F.3d 801, 803 (7th Cir. 2013). Because the instruction clearly articulated the *Castillo* standard, we doubt that listing relevant *Duran* factors caused the jury significant confusion. Further, the instruction cautioned the jury to only consider the factors to the extent they proved helpful and suggested that the jury could consider additional, unlisted factors.

Although the jury instructions accurately stated the law in this case, we re-emphasize that common sense should serve as the jury's primary guide in these cases. *Duran*, 407 F.3d at 840. To that end, we urge district courts drafting jury instructions to consider whether "less is more" in each case. While the *Duran* factors provide helpful considerations, simple and succinct instructions invite the jury to rely on its own intuition and common sense in resolving the cases. *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir. 1994) ("Good instructions use simple words in short, concrete sentences."); *see also Brown*, 724 F.3d at 803 (7th Cir. 2013) (noting that "[i]t can be easier to determine 'furtherance' by a holistic analysis than by dissecting the issue into parts.").

B. *The District Court Did Not Err by Admitting the Government's Expert Witness Testimony*

Johnson argues that the district court erroneously admitted Special Agent Aalto's expert testimony. He objects to Aalto's testimony on two grounds. First, he argues that the district court should have excluded Aalto's testimony about the relationship between drugs and guns because it failed to

satisfy the requirements of Federal Rule of Evidence 702 and
*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Alter-
natively, Johnson contends that the court should have ex-
cluded as irrelevant any portion of Aalto's testimony not di-
rectly related to the relationship between drugs and guns un-
der Federal Rule of Evidence 401.

*1. The District Court Did Not Abuse Its Discretion by Admit-
ting Aalto's Testimony Under Rule 702*

The admission of expert testimony is governed by Federal
Rule of Evidence 702 and *Daubert*. *See C.W. ex rel. Wood v. Tex-
tron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). Under Rule 702,
expert testimony must assist the trier of fact and demonstrate
sufficient reliability. *Id*.

"We employ a two-step standard of review in cases chal-
lenging a district court's admission or exclusion of the testi-
mony of an expert." *Textron*, 807 F.3d at 835. We first review
the district court's application of *Daubert*'s framework *de novo*.
*Id*. Second, if the district court properly applied *Daubert*, we
review its decision not to exclude expert testimony for an
abuse of discretion. *Id*. We afford the district court's eviden-
tiary rulings special deference and find an abuse of discretion
"only where no reasonable person could take the view
adopted by the trial court." *United States v. Causey*, 748 F.3d
310, 316 (7th Cir. 2014) (quotation omitted).

"The Supreme Court has made clear that in applying Rule
702, district courts serve a gatekeeping function and must en-
sure that the expert testimony at issue 'both rests on a reliable
foundation and is relevant to the task at hand.'" *United States
v. Cruz-Velasco*, 224 F.3d 654, 660 (7th Cir. 2000) (quoting *Daub-
ert*, 509 U.S. at 597). In *Kumho Tire Co. v. Carmichael*, the Court

explained that when testing the reliability of an expert opinion, courts must adjust the *Daubert* "gatekeeper" factors to fit the facts of the particular case at issue. 526 U.S. 137, 147 (1999).

"Our court has long recognized that testimony regarding the methods used by drug dealers is helpful to the jury and therefore a proper subject of expert testimony." *United States v. Winbush*, 580 F.3d 503, 510–11 (7th Cir. 2009); *see also United States v. Foster*, 939 F.2d 445, 452 (7th Cir. 1991) ("'The investigator and the expert witness both serve as a link to the drug culture in providing the jury with [an] understanding of the intricate patterns and *modus operandi*' of those involved in narcotics trafficking." (alteration in original) (quoting *United States v. Gonzalez*, 933 F.2d 417, 428–29 (7th Cir. 1991)).

Johnson argues that the district court improperly applied the *Daubert* framework to Aalto's testimony and instead deemed Aalto's testimony *per se* reliable and admissible. Specifically, Johnson objects to the district court's characterization of the case law concerning law enforcement expert testimony about drug dealers' *modus operandi*. He claims that the district court failed to seriously consider whether and how Aalto's experience and training supported his opinion concerning relationship between drugs and guns.

We disagree. Johnson's objections to the admission of Aalto's testimony bear a striking resemblance to those raised in *United States v. Tingle*, 880 F.3d 851, 854 (7th Cir.), *cert. denied*, 138 S. Ct. 1567 (2018). In that case, the defendant faced charges for possessing and distributing methamphetamine and possessing a firearm in furtherance of a drug trafficking crime. *Id*. at 852. He argued that the district court errantly allowed the government's witness to testify as an expert, "without properly examining his credentials or considering

whether expert testimony would assist the jury." *Id*. at 854. We explained that the district court need not conduct a *Daubert* hearing, "'where the reliability of an expert's methods is properly taken for granted.'" *Id*. (quoting *Kumho Tire*, 526 U.S. at 152). And we relied on the witness's expertise—with 16 years of experience with the DEA and 14 years of experience with the Missouri State Highway Patrol—to determine that he was clearly "qualified to testify as an expert in his field and that his testimony could be helpful to the jury." *Tingle*, 880 F.3d at 854. We also noted expert's formal law enforcement training and heavy involvement in drug cases. *Id*. Even before *Tingle*, this court explained that such testimony is reliable when based both on significant law enforcement experience and an application of the case's facts. *United States v. Allen*, 269 F.3d 842, 846 (7th Cir. 2001).

Here the district court similarly declined to conduct a *Daubert* hearing concerning Aalto's expert testimony on the relationship between drugs and guns in the narcotics underworld. However, the record reflects that the court considered Aalto's significant qualifications and experience, and properly applied the *Daubert* framework.

As to Johnson's objections to Aalto's methodologies, the district court correctly explained that the premise of admitting testimony like Aalto's relies on the notion that jurors "are not well versed in the behavior of drug dealers." *Winbush*, 580 F.3d at 511 (quoting *Foster*, 939 F.2d at 452). The court noted that Aalto could relay to the jury behaviors he personally witnessed among drug dealers. These experiences could help explain how and why drug dealers possess firearms. In other words, Aalto's shared experiences gave the jurors context for an unfamiliar subculture and provided them with a better

foundational understanding than they might glean from television or popular culture. *Foster*, 939 F.2d at 452. This testimony was relevant to Johnson's case because it helped the jury better evaluate whether his firearm possession was consistent with and typical to the drug trade.

*2. The District Court's Properly Admitted Aalto's Other Testimony*

Johnson additionally contends that the district court erred because it admitted Aalto's testimony about the other items Johnson possessed during the arrest and Johnson's Facebook messages. Because the government only needed to prove the firearm charge, Johnson believes the district court should have excluded evidence unrelated to the firearm as irrelevant under Federal Rule of Evidence 401.

"The standard of review for the admission of evidence where relevance is at issue is … abuse of discretion." *United States v. Gill*, 58 F.3d 334, 337 (7th Cir. 1995). District courts properly admit evidence as relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a).

Johnson objects to Aalto's testimony about how his activities resembled those of the typical drug dealer. This includes Aalto's testimony on how drug dealers often carry multiple cell phones, how they prepackage drugs, how Johnson's Facebook messages showed him setting up a drug deal using industry slang, and how much money drug dealers carry on them at a given time.

We cannot agree with Johnson that the district court abused its discretion by admitting this testimony. Aalto's tes-

timony provided the jury with relevant context clues concerning Johnson's firearm. While Johnson could have been carrying a firearm for a lawful purpose—as many citizens do—the other items in Johnson's possession and his Facebook messages undoubtedly changed the situation's complexion. Aalto's testimony showed that Johnson carried many regular tools of a drug dealer and the firearm's presence among them was not merely incidental.

### C. Sufficient Evidence Supported Johnson's Conviction

Lastly, Johnson argues that the government presented insufficient evidence to support his conviction. Specifically, he believes that the government failed to provide evidence linking his firearm to drug dealing. He urges that upholding the district court's ruling effectively sets a standard that simply possessing a gun while simultaneously possessing drugs sufficiently supports a conviction under 18 U.S.C. § 924(c).

"We review sufficiency of evidence challenges in the light most favorable to the prosecution and will only reverse if we determine that no reasonable finder of fact could find the defendant guilty beyond a reasonable doubt." *United States v. Eller*, 670 F.3d 762, 765 (7th Cir. 2012). Our role is "limited to ensuring that a valid legal theory supports the conviction and that there is some evidence from which a rational jury could find in favor of that legal theory." *United States v. Amaya*, 828 F.3d 518, 525 (7th Cir. 2016) (quoting *Duran*, 407 F.3d at 842).

We previously explained that, "the mere presence of a firearm in a home or location where drugs are sold is not itself sufficient to prove the 'in furtherance of' prong of the statute and that there must be some nexus or connection between the firearm and the drug-selling operation." *Eller*, 670 F.3d at 765.

Although we continue to caution that juries must find reasonable connections (beyond mere proximity) linking the firearm and the drug operation, we also iterate that a "fact finder is certainly entitled to come to the common-sense conclusion that when someone has both drugs and a firearm on their person, the gun is present to further drug trafficking." *Castillo*, 406 F.3d at 815 (quoting *United States v. Lomax*, 293 F.3d 701, 706 (4th Cir. 2002)).

We disagree with Johnson's claim that the government presented insufficient evidence to support his conviction. Johnson's Facebook messages indicate that he conducted a drug deal earlier the same evening. When Officer Buccellato made the arrest, Johnson's pockets contained controlled substances that he packaged individually for sale. Johnson also carried other drug-dealing accoutrements. The loaded pistol had a bullet in its chamber. A reasonable fact finder could determine that Johnson carried a pistol to protect himself and his drugs on the night he was arrested. Altogether, we believe sufficient evidence supported the jury's verdict finding Johnson guilty beyond a reasonable doubt.

## III. CONCLUSION

The district court administered jury instructions that correctly stated the law and sufficiently charged the jury with its task of determining whether Johnson possessed his firearm in furtherance of a drug trafficking crime. The district court permissibly admitted Special Agent Aalto's testimony, which Aalto based on significant law enforcement training and drug enforcement experience. Lastly, the government presented sufficient evidence to support Johnson's conviction. AFFIRMED.