In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-3915

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

AJA L. BLOUNT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05-CR-30091—**G. Patrick Murphy**, *Chief Judge.*

ARGUED MAY 31, 2007—DECIDED SEPTEMBER 17, 2007

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Aja Blount raises two eviden-
tiary challenges to his conviction for possessing a fire-
arm in furtherance of a drug trafficking crime. He first
contends that the district court improperly admitted
evidence of his earlier drug and gun activities—prior bad
acts under Federal Rule of Evidence 404(b)—because the
government provided insufficient notice prior to trial. He
also argues that a police officer impermissibly testified as
to Blount's motives and supplied legal conclusions, in
violation of Rules 704 and 702. We find that sufficient
notice was given and that the evidence provided by the
officer was properly admitted. Therefore, we affirm.

## I. BACKGROUND

State police arrested Blount in his home in May 2005 on an outstanding warrant for drunk driving, and while searching him they discovered a baggie of crack cocaine. After obtaining a search warrant, they found on Blount's bed 40 grams of crack, a digital scale, and a handgun. During a video-taped interview, Blount admitted that everything seized was his. He was indicted two weeks later for possession with intent to distribute crack, 21 U.S.C. § 841(a)(1), and possessing a handgun as a felon, 18 U.S.C. § 922(g)(1).

On January 11, 2006, a week before trial, the government filed a "notice of intent to utilize 404(b) evidence," which included a proffer by Christopher Gardner, an acquaintance of Blount's who also faced federal drug charges. In the two-page proffer, Gardner stated that in April 2005 he had sold crack to Blount three times in the Eagle Park neighborhood of Madison, Illinois; that Blount frequently visited the neighborhood looking for drugs (both he and Gardner had relatives living there); and that Gardner "did see Blount carrying a firearm with him on one occasion in Eagle Park." Gardner described the gun as a black .357 and noted that "Blount had previously indicated that he also had a 9 mm firearm."

Also on January 11, the government filed a notice that it would be examining three expert witnesses who would "testify to the extensive use of firearms in furtherance of narcotics trafficking crimes." The next day the government returned a superseding indictment adding a third charge against Blount: possessing a gun in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1). On July 14 the government issued a second 404(b) notice, stating that it wished to introduce evidence that in 2003 Blount was arrested and convicted in state court for possessing drugs and a gun.

On July 17, the day before trial, Blount filed an objection to the government's 404(b) notices, contending that the evidence was stale and that, in light of Blount's video-taped confession, evidence of prior bad acts would amount to "overkill." The district court agreed and excluded any evidence of Blount's 2003 arrest, but allowed the government to present Gardner's testimony, which, the court said, "goes directly to the issue of intent." The trial began the next day, and Gardner eventually took the stand. During the government's direct examination, he testified that once when Blount bought crack from him, Blount was carrying a black .357 revolver and he showed Gardner the gun. Over a defense objection that the question called for speculation, Gardner testified that he thought Blount was armed "to protect the deal going down with me . . . to make sure nothing went wrong," and agreed with the government's suggestion that selling drugs is dangerous and that brandishing a gun "make[s] it known to others: I've got this just in case anything goes wrong."

Also at trial, Officer Brett Boerm of the Collinsville, Illinois Police Department testified. An expert on drug investigations, Officer Boerm opined that in light of the amount of crack found on Blount's bed, the drugs were for distribution rather than personal use. He then was asked whether in his experience guns were frequently mixed up in drugs cases; after he answered that they were, he was asked the purpose of the guns in those cases. The defense objected, stating that the form of the question "assumes that the purpose of the firearm in every instance is the same," but the objection was overruled. Boerm answered: "The firearms are used to protect their stash, their business, and themselves." Then the following exchange occurred:

> Q: Based on your experience then, what is your expert opinion as to how the gun found in this case was being used by the defendant, Aja Blount?

A:   The way that the—all three items on top of the bed were positioned, I would say that the firearms were also being—the firearm was being used in the same way, to protect the business, the drug business.

The jury found Blount guilty on all counts and the district court sentenced him to a total of 181 months' imprisonment: concurrent sentences of 121 and 120 months on the drugs and felon-in-possession counts, and a consecutive 5-year sentence for possessing a gun in furtherance of a drug trafficking crime. On appeal he challenges only the possession-in-furtherance conviction.

## II. ANALYSIS

### A.  Sufficient notice of Rule 404(b) testimony was given

Blount first contends that the district court improperly admitted Gardner's testimony, arguing that the government provided insufficient notice of the testimony's content. Federal Rule of Evidence 404(b) reads:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, *provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice* in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, *of the general nature of any such evidence* it intends to introduce at trial.

(Emphasis added.) The notice provision emphasized above was added in 1991, and the Advisory Committee Notes

that accompany the 1991 amendment state that notice "is intended to reduce surprise and promote early resolution on the issue of admissibility," and that "no specific time limits are stated in recognition that what constitutes a reasonable request or disclosure will depend largely on the circumstances of each case." Without notice, 404(b) evidence is inadmissible. *See* Fed. R. Evid. 404(b) advisory committee's note (1991); *United States v. Carrasco*, 381 F.3d 1237, 1241 (11th Cir. 2004) (per curiam); *United States v. Vega*, 188 F.3d 1150, 1152-55 (9th Cir. 1999).

Blount contended in his brief that we should review his 404(b) argument for an abuse of discretion, but at oral argument he all but conceded that he did not object to Gardner's testimony on notice grounds. He did object that one of the government's questions called for speculation, but speculation and lack of notice are two different things, and the objection only preserved the former as an issue for appeal. *See United States v. Swan*, 486 F.3d 260, 263-64 (7th Cir. 2007); *United States v. Russell*, 134 F.3d 171, 179 (3d Cir. 1998). We therefore review this argument for plain error, and will only reverse if the error is plain, compromises Blount's substantial rights, and seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Prude*, 489 F.3d 873, 880 (7th Cir. 2007).

It is clear that the government provided *some* sort of notice, for it twice sent 404(b) messages to Blount. Arriving as it did a week before trial, the first notice—the relevant one—was timely. *See United States v. Watson*, 409 F.3d 458, 465-66 (D.C. Cir. 2005) (48 hours sufficient); *United States v. Preciado*, 336 F.3d 739, 745 (8th Cir. 2003) (several days sufficient). The real question, though, is whether the notice was adequate. Mindful of Rule 404(b)'s requirement that the government provide the "general nature" of the evidence, courts have not been

stringent in this regard. In *United States v. Russell*, 109 F.3d 1503, 1507 (10th Cir. 1997), for example, the government notified the defendant that it might offer "prior and subsequent conduct involving the distribution of controlled substances"—not exactly a fountain of details—and the court found this sufficient notice. Also, in *United States v. Erikson*, 75 F.3d 470, 478 (9th Cir. 1996), a doctor on trial for Medicare fraud was informed that a former colleague would be testifying about the defendant's shady billing practices at another clinic, even though he "did not know specifically what testimony the government planned to use."

But Blount claims he didn't know that Gardner would testify that Blount carried a revolver *for protection during a drug buy* in April 2005—which turned out to be key evidence of his intent to possess the gun in May 2005 in furtherance of a drug trafficking crime. (Gardner's testimony showed that the discovery of Blount's gun on his bed next to a huge stash of crack was not just a one-off.) Lack of notice is a difficult argument for Blount to make. After all, Gardner's proffer, which was attached to the first 404(b) notice, discussed for ten paragraphs Blount's many trips to Eagle Park to buy crack, and then stated in the last paragraph that Gardner saw Blount "carrying a firearm with him *on one occasion in Eagle Park*" (emphasis added). The natural inference is that he was carrying a gun during one of the drug-buying trips. Moreover, Blount probably should have realized that Gardner might link the gun and the drugs when the government filed, on the very same day as its 404(b) notice, a list of expert witnesses to testify to "the extensive use of firearms in furtherance of narcotics trafficking crimes" and then the next day returned a new indictment with a possession-in-furtherance count. Rule 404(b) notice needn't take any particular form, Fed. R. Evid. 404(b) advisory committee's note (1991); *see United States v. Gorman*, 312 F.3d 1159,

1163 (10th Cir. 2002) (verbal notice sufficient), and these other indicators, combined with the 404(b) message, likely provided actual notice of what was coming. *Cf. United States v. Tringali*, 71 F.3d 1375, 1382 (7th Cir. 1995) (where notice under 21 U.S.C. § 851 was slightly deficient, contemporaneous 404(b) notice of same prior convictions supplied actual notice to defendant).

Nevertheless, we note that the prosecutor may not have been entirely clear that Gardner was going to testify to more than drug sales. During the pretrial hearing on July 17, the government didn't say that Gardner would testify to Blount's gun possession, let alone during a drug sale—it just said that "on three separate occasions, Chris Gardner sold 2 ounces of crack to this defendant." To the extent that these mixed signals prevented notice to Blount of the extent of Gardner's testimony, we will analyze whether any error was plain. We conclude that it was not. A significant amount of other evidence showed that the gun on Blount's bed "advanced and promoted" Blount's drug activities. *See United States v. Castillo*, 406 F.3d 806, 813-19 (7th Cir. 2005). Blount concedes that he was a convicted felon, so the gun was illegal; that he possessed the gun and the drugs; that the gun was loaded; that it was discovered right next to distribution levels of crack as well as drug paraphernalia (the scale); and that it was a handgun rather than some dusty musket displayed over a fireplace next to a moose. Also, even though he said it was not his practice to sell drugs out of his house and that he bought the gun for protection from a "hostile acquaintance," he admitted that he had sold drugs from home in the past, and he occasionally kept the gun by the door in case "I got to go outside and run back in the house . . . . Some bullshit comes up." Given these factors, a jury could have found that Blount possessed the gun "in furtherance of" his drug activity even in the absence of Gardner's testimony. *See id.*

### B. Rule 704 and 702 expert testimony was properly admitted

Blount next contends that the district court violated Federal Rules of Evidence 704(b) and 702 when it allowed Officer Boerm to testify "concerning Mr. Blount's mental state" by offering his expert opinion that the gun was used in furtherance of Blount's drug activities. Again, since Blount did not object on these grounds, we review for plain error.

Rule 704(b) is an exception to Rule 704(a), which allows opinion testimony that "embraces an ultimate issue to be decided by the trier of fact." Part (b) reads:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or a defense thereto. Such ultimate issues are matters for the trier of fact alone.

This exception to 704(a) addresses a concern that testimony by a psychiatrist or other mental health expert could extend beyond medical conclusions into legal conclusions and unduly influence the jury. *See United States v. Lipscomb*, 14 F.3d 1236, 1241-42 (7th Cir. 1994); *United States v. Smart*, 98 F.3d 1379, 1388 (D.C. Cir. 1996). But when the rule is applied to law enforcement experts testifying about the criminal nature of a defendant's actions, it takes on a more limited role. "[S]uch testimony should not be excluded under Rule 704(b) as long as it is made clear, either by the court expressly or in the nature of the examination, that the opinion is based on the expert's knowledge of common criminal practices, and not on some special knowledge of the defendant's mental processes." *Lipscomb*, 14 F.3d at 1242; *see also*

*United States v. Glover*, 479 F.3d 511, 516-17 (7th Cir. 2007).

Officer Boerm's testimony did not transgress Rule 704(b)'s limitations. No juror could have believed that Boerm was using special personal knowledge of Blount rather than assisting the jury to infer Blount's motives from a general trend linking guns and drugs. He expressly gave his "expert opinion" as a policeman who had worked dozens of drug cases before; he never referred to Blount's "intent" or "intentions"; and he based his conclusion on the way the drugs and gun were discovered, not on what he knew of Aja Blount. *See United States v. Mancillas*, 183 F.3d 682, 706 (7th Cir. 1999). Moreover, the district court cautioned the jury that it could take Boerm's opinion or leave it, further reducing any fear of inappropriate influence. *See United States v. Brown*, 7 F.3d 648, 655 (7th Cir. 1993).

Finally, Blount contends that Boerm's testimony was a mere legal conclusion and as such was unhelpful to the jury. Federal Rule of Evidence 702, which governs expert testimony, only allows expert evidence that "will assist the trier of fact to understand the evidence or to determine a fact in issue." The average juror does not know how a drug business is run, *United States v. Allen*, 269 F.3d 842, 846 (7th Cir. 2001); *Brown*, 7 F.3d at 652, and to that extent Boerm's testimony was useful in showing the link between crack and guns. Moreover, Boerm did not couch his testimony in legal terms by saying he believed Blount "possessed" the gun "in furtherance" of a drug trafficking crime; rather, he stated that the gun was used "to protect the business, the drug business." *See United States v. Perkins*, 470 F.3d 150, 158 (4th Cir. 2006). There is a difference between stating a legal conclusion and providing concrete information against which to measure abstract legal concepts. *Id.* at 158-59. We do not be-

lieve the district court plainly erred in allowing Boerm's testimony.

## III. CONCLUSION

For these reasons, we AFFIRM Blount's conviction.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*