In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1604

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

RONALD TINGLE,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 15-cr-00023 — **Tanya Walton Pratt**, *Judge*.

ARGUED NOVEMBER 6, 2017 — DECIDED JANUARY 25, 2018

Before BAUER, KANNE, and ROVNER, *Circuit Judges*.

KANNE, *Circuit Judge*. Ronald Tingle was tried and con-
victed of possessing and distributing methamphetamine and
of possessing a firearm in furtherance of a drug trafficking
crime. On appeal, he argues that the district court erred when
it allowed a government witness to give expert testimony
without properly vetting the witness's credentials and when
it allowed the same witness to testify regarding the defend-
ant's mental state. Additionally, Tingle argues that he should

have been granted access to grand jury materials and that his case should have been dismissed based on prosecutorial vindictiveness. For the reasons that follow, each of these claims fails, and the judgment of the district court is affirmed.

## I.   BACKGROUND

The Indiana State Police received information from a confidential informant that defendant, Ronald Tingle, was selling methamphetamine. Through the confidential informant, the police conducted several controlled buys at Tingle's residence. Then the police obtained and executed a search warrant at the residence. During the search, the police discovered 165 grams of methamphetamine, digital scales, $5,520 in cash in the house, and an additional $1,190 on Tingle's person. The police also found eight firearms, including a loaded handgun on top of a desk that contained methamphetamine, scales, and money.

A grand jury returned an indictment charging Tingle with one count of possession of methamphetamine with intent to distribute and three counts of distribution, as well as a forfeiture allegation. The government offered Tingle a plea deal. During the plea negotiation, the government informed Tingle that if he rejected the offer, the government would seek a superseding indictment adding charges that would increase the mandatory minimum sentence. Tingle rejected the offer, and the government obtained two superseding indictments charging Tingle with additional offenses that increased the possible mandatory minimum sentence. Tingle's counsel filed a motion to dismiss the additional charges based on prosecutorial vindictiveness. The motion was denied.

Tingle filed a pretrial motion seeking disclosure of grand jury testimony, which the district court denied. He also filed a motion to suppress items found in the search, which was denied, and a motion to bar the government from introducing a 1982 drug conviction, which was granted.

At trial, the court told the government that it would not label any witness as an "expert witness," pursuant to the judge's courtroom procedures. Despite this procedure, the court gave a final jury instruction on expert witnesses, without identifying which witnesses were considered experts. Tingle and the government agreed to this instruction without objection.

Tingle testified and admitted to possessing the methamphetamine, but denied the distribution allegations. He claimed the drugs were for personal use, explaining that he was planning a year-long boat trip to justify the large quantity. Agent Steele, a DEA agent, testified regarding the amount of drugs and the location of the guns found during the search of Tingle's house. The jury convicted Tingle on all counts. Tingle appeals.

## II.   ANALYSIS

Tingle raises four issues on appeal: whether the district court allowed an expert witness to testify without properly certifying his credentials; whether Agent Steele improperly testified regarding Tingle's mental state; whether Tingle should have been granted access to grand jury transcripts; and whether the charges should have been dismissed for prosecutorial vindictiveness. For the reasons that follow, each of these claims fails.

*A. Whether the district court failed to assess Agent Steele's credentials before allowing him to testify as an expert witness*

Before trial, the government notified the court that it intended to introduce expert-witness testimony. It provided information on the experts' qualifications and an explanation of how their testimony would be helpful to the jury. Pursuant to its standard courtroom procedures, the district court refused to label any witnesses as experts. At the conclusion of the trial, however, the district court told the jury that they had heard testimony from expert witnesses. The district court instructed the jury to "judge these witnesses' opinions and testimony the same way you judge the testimony of any other witness."(R. 151 at 12.) Tingle and the government agreed to this instruction.

Tingle argues the court allowed Steele to testify as an expert witness without properly examining his credentials or considering whether expert testimony would assist the jury. Because this argument is raised for the first time on appeal, we review the district court's decision to admit Steel's testimony for plain error. *United States v. Phillips*, 596 F.3d 414, 416 (7th Cir. 2010).

When "[f]aced with a proffer of expert scientific testimony … the trial judge must determine at the outset … whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 592 (1993); *see also* Fed. R. Evid. 702. "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts in issue." *Daubert*, 509

U.S. at 592–93. In *Kumho Tire Co. v. Carmichael*, the Supreme Court clarified that this "gatekeeping" obligation of the court applies to all expert testimony. 526 U.S. 137, 147–49 (1999).

Although the court never held a *Daubert* hearing, a hearing is unnecessary "where the reliability of an expert's methods is properly taken for granted." *Id.* at 152. It is clear that Steele was properly qualified to testify as an expert in his field and that his testimony could be helpful to the jury. Steele served as a DEA agent for sixteen years and as a trooper with the Missouri State Highway Patrol for fourteen years. He attended the DEA academy and the Missouri State Highway Patrol Academy. He was involved in many drug cases, including searches of drug suspects' residences and vehicles. Steele explained that his testimony was based on that training and experience. Expertise of this sort is helpful to a jury in a drug distribution case. *See United States v. Winbush*, 580 F.3d 503, 510–11 (7th Cir. 2009). The district court did not err in allowing Steele to testify.

That being said, the district court's practice of not identifying expert witnesses is problematic. The Federal Rules of Evidence and Supreme Court precedent make clear that courts must examine the qualifications of expert witnesses and consider whether the expert's testimony will be helpful to the jury. The district court cannot use such procedures to avoid its gatekeeper responsibility.

B. *Whether Agent Steele improperly testified regarding Tingle's mental state*

Tingle also argues that the district court erred when it allowed Steele to testify regarding Tingle's mental state. Tingle

did not object to this testimony at trial, so the plain error standard of review applies. *Phillips*, 596 F.3d at 416.

No expert witness may state an opinion as to whether a defendant had a mental state that constitutes an element of the charged crime. Fed. R. Evid. 704(b). Circumstantial evidence regarding a criminal defendant's state of mind, however, is admissible. *See Winbush*, 580 F.3d at 511–12 (noting that direct evidence of intent to distribute is "predictably rare, so the government often employs expert testimony"). Tingle argues that Steele testified regarding Tingle's mental state when he said that the amount of drugs found in the residence was "definitely for distribution" (R. 201 at 70) and when he testified that the gun found on top of the desk where the drugs and money were located was "utilized as protection by Mr. Tingle to protect himself and/or the methamphetamine and the currency (R. 201 at 70–71)."

When read in context, Steele's testimony does not speak directly to Tingle's mental state. He compared the quantity of drugs found in the search with the amount of an average user's personal consumption. He also described the proximate location of the gun to the drugs and explained that guns found elsewhere in a house would not typically be considered as used in connection with drugs. True, Steele testified regarding his impression of the evidence in this case instead of speaking generally, but he framed his responses in light of his training and experience.

In *Winbush*, an FBI agent was asked about various quantities of drugs. 580 F.3d at 512. The agent testified that, "from [his] perspective," the discovery of a given quantity of crack cocaine would indicate that an individual should be investigated as a trafficker. *Id.* The agent further testified that a given

quantity of crack cocaine was "distribution level … not user level." *Id.* The court decided the testimony was not an inadmissible opinion on the defendant's intent. *Id*.

In *United States v. Blount*, drugs, a scale, and a handgun were found on the defendant's bed during a search of his home. 502 F.3d 674, 676 (7th Cir. 2007). A police officer testified that, given the location of the items, he thought that the gun was likely used to protect the defendant's drug business. *Id.* at 677. The court concluded that "[n]o juror could have believed that [the officer] was using special personal knowledge of [the defendant] rather than assisting the jury to infer [the defendant's] motives from a general trend linking guns and drugs." *Id.* at 679. Therefore, the court decided, this testimony did not violate Rule 704. *Id.*

The testimony offered in this case is very similar to the testimony in *Winbush* and in *Blount*. Admission of the testimony was not an error, let alone plain error.

C. *Whether the district court abused its discretion when it refused Tingle access to the grand jury materials*

Tingle filed a pretrial motion seeking disclosure of all grand jury materials. The district court denied the motion. We review the district court's decision not to disclose grand jury materials for abuse of discretion. *Walker v. Sheahan*, 526 F.3d 973, 977–78 (7th Cir. 2008).

Information from a grand jury inquiry is presumptively secret. Fed. R. Crim. P. 6(e). The district court need not allow the defense to examine grand jury materials in the absence of a showing of a particularized need. *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958); *see also Dennis v. United States*, 384 U.S. 855, 870–72 (1966); *Pittsburg Plate Glass Co. v.*

*United States*, 360 U.S. 395, 400 (1959). To obtain grand jury materials, the moving party "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that the request is structured to cover only material so needed." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979).

Tingle had an opportunity to explain why he should have access to the grand jury materials when he moved for disclosure. He failed to show that his need for disclosure outweighed the need for secrecy. The district court did not abuse its discretion when it denied the motion.

*D. Whether the district court erred when it denied Tingle's motion to dismiss the superseding indictment*

Finally, Tingle argues that his due process rights were violated when the prosecutor sought superseding indictments after Tingle rejected the government's plea offers. He argues that the superseding indictments were sought immediately after he rejected the offer—thus exercising his constitutional right to a jury trial—and that there was no basis for seeking a superseding indictment at that time. Tingle moved to have the charges against him dismissed on this basis. The district court denied his motion without a hearing. We review the district court's legal conclusions *de novo* and its findings of fact for clear error. *United States v. Spears*, 159 F.3d 1081, 1086 (7th Cir. 1998).

To obtain an evidentiary hearing on a prosecutorial vindictiveness claim, Tingle needed to show he "offer[ed] sufficient evidence to raise a reasonable doubt that the government acted properly" in seeking the superseding indictments.

*United States v. Falcon*, 347 F.3d 1000, 1004 (7th Cir. 2003). Prosecutorial vindictiveness is, in some contexts, presumed where a prosecutor takes action that is detrimental to a defendant after the defendant exercises a legal right. *United States v. Goodwin*, 457 U.S. 368, 373 (1982); *Spears*, 159 F.3d at 1086. But "the Supreme Court has refused to extend the presumption of vindictiveness to pre-trial prosecutorial conduct." *Spears*, 159 F.3d at 1086. So, no presumption applies here.

The government informed Tingle that it would seek the superseding indictments if he rejected the plea offer. In *Alabama v. Smith*, the Supreme Court said that a prosecutor may "threaten[] a defendant with increased charges if he does not plead guilty, and follow[] through on that threat if the defendant insists on his right to stand trial." 490 U.S. 794, 802 (1989); *see also Goodwin*, 457 U.S. at 378–79 ("For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded."). In this case, Tingle was well aware that the prosecutor intended to exercise his authority to file additional charges if the plea offer was not accepted. Tingle's motion to dismiss was properly denied.

### III.   CONCLUSION

Although the district court should have labeled Agent Steele an expert witness, Steele had the requisite qualifications to testify as an expert in this case. Steele's testimony, drawn from his training and experiences, provided circumstantial evidence of Tingle's intent to commit the crimes, but Steele did not improperly opine on Tingle's mental state. The district court did not err when it allowed Steele to testify.

Nor did the district court err when it denied Tingle's motion for access to grand jury transcripts without a hearing or when it denied Tingle's motion to dismiss the charges brought against him.

The judgment of the district court is, therefore, AFFIRMED.