**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 15, 2020*
Decided January 8, 2021

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 19-3456

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Southern District |
| | of Indiana, Evansville Division. |
| *v.* | |
| | No. 3:17-cr-00030-001 |
| MAURICE D. GARDNER, | |
| *Defendant-Appellant.* | Richard L. Young, |
| | *Judge.* |

## O R D E R

A jury convicted Maurice Gardner of trafficking methamphetamine and possessing a gun during that offense. Evidence against Gardner included his admission that he was trying to sell drugs, scales and bags of methamphetamine found on him,

---

* We previously granted the parties' joint motion to waive oral argument. This appeal was therefore submitted on the briefs and the record. FED. R. APP. P. 34(a)(2)(C), (f).

and expert testimony from an officer who opined that Gardner's text messages discussed drug sales in coded language. Gardner challenges only the expert testimony, arguing it was not properly admitted under Federal Rule of Evidence 702. We conclude the district court permissibly ruled that the officer was qualified to translate the coded texts, and that given the other evidence at his jury trial, Gardner cannot show he was prejudiced by the testimony. So we affirm.

## I. Background

In April 2017, in Evansville, Indiana, Gardner was riding as a passenger in a vehicle that police stopped for a traffic infraction. During a later search, the officers found bags containing six grams of methamphetamine, digital scales, and a loaded firearm. When an officer asked why he was in the area, Gardner admitted he was trying to sell methamphetamine. Gardner was indicted on three charges: (1) possession with intent to distribute five grams or more of methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(B); (2) carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1); and (3) possessing a firearm as a felon, *id.* § 922(g)(1).

At Gardner's jury trial, the government called Evansville Police Officer Cliff Simpson as an "expert in narcotics distribution." Simpson testified to his familiarity with the use and distribution of controlled substances, including methamphetamine, based on his 25 years with the Evansville Police Department, including 21 years as a narcotics investigator and 15 years as a task force officer with the Drug Enforcement Administration. The government asked Simpson to interpret text messages, which Gardner had sent around the time of his arrest. Gardner's attorney objected, arguing Simpson was unqualified to interpret Gardner's text conversation because he was not involved in the investigation and he did not translate those messages contemporaneously with their transmission:

> I'd like to issue an objection to Mr. Simpson testifying about the content of these extractions and what they mean. I believe this to be very different than in a conspiracy case when there is a lawful wiretap and he may be listening realtime. These were extracted two years after the fact and anything he testifies to would have to be purely guessing. He has no context … [H]e may be an expert on narcotics but he is not an expert on the meaning of conversation between two people he is not a party to or that he is [not] listening to realtime.

Transcript of Trial at 151–52.

The district court asked the government to elaborate on the foundation for Simpson's qualifications to interpret the text messages. Simpson explained he had interpreted phone calls and text messages in 35 to 45 wiretap investigations, some involving between 12 and 15 phones per case. He had spent many hours listening to and translating phone calls and reading texts about distributing illegal drugs. He also had thousands of conversations with people involved in use and distribution of controlled substances about the coded language they use when dealing drugs. After this explanation, the court overruled the defense's objection and allowed Simpson to testify about Gardner's text messages.

With the foundation established, the government continued with Simpson's testimony. Simpson reviewed transcripts of more than 100 text messages Gardner had sent around the time of his arrest. Simpson testified that, in context, the text stating "she will pay 245 for it" meant someone would pay $245 for methamphetamine; "I can do one for 250 and dat's all" meant Gardner would sell a quantity of the drug—likely three grams—for $250; and "I ain't got dat kind of deal rite now. I'm grinding dis out" meant that Gardner was not selling the drug in bulk but only in smaller amounts. Simpson admitted he was not involved in the search or arrest of Gardner and that he was first asked to review the text messages two weeks before trial.

At closing arguments, Gardner's counsel restricted his challenge to the government's case. He did not contest that the evidence supported a conviction on the drug trafficking charge. Given the outcome of the search and Gardner's admission at his arrest about trying to sell methamphetamine, the defense said it would "respect [their] judgment on the drug trafficking charge" and if they "believe [he] is selling drugs, that's fine." Instead, the defense focused its closing arguments on contesting the two charges that required proof of gun possession.

The jury convicted Gardner of all three charges, and the court sentenced him to 240 months in prison, a term below his guidelines range of 262 to 327 months.

## II. Discussion

On appeal, Gardner challenges only the admission of Simpson's expert testimony about his text messages, arguing Simpson was unqualified to give that testimony. We review Gardner's challenge as follows: First, we review de novo whether the district court properly applied *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), in considering expert testimony under Federal Rule of Evidence 702. Second, we evaluate whether admitting the testimony was an abuse of discretion. *United States v. Johnson*,

916 F.3d 579, 586 (7th Cir. 2019). Finally, even if the district court abused its discretion, we would remand for a new trial only if that error affected Gardner's substantial rights. *See United States v. Jett*, 908 F.3d 252, 265 (7th Cir. 2018).

Gardner maintains that the district court did not properly apply *Daubert* to Simpson's testimony about the text messages. Under *Daubert*, a district court must assess whether proposed expert testimony "both rests on a reliable foundation and is relevant." 509 U.S. at 597; *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147–49 (1999) (applying *Daubert* framework to all expert testimony). Gardner contends the district court failed to analyze whether Simpson's opinion was reliable, and thus the court "failed to require the government provide a solid foundation" for Simpson's opinion.

For two reasons, Gardner's argument is unconvincing. First, the district court adequately examined whether Simpson's translation of Gardner's text messages was reliable: After hearing about Simpson's more than two decades of policing illegal drug dealing, and before the court allowed the jury to hear his testimony, it asked the government to elaborate on the foundation for Simpson's ability to interpret coded texts. The questioning that followed satisfied *Daubert*'s requirement for reliability and relevance: The court learned that Simpson had investigated dozens of drug trades involving (in total) hundreds of phone exchanges with coded messages that he successfully interpreted after having thousands of conversations with drug users and dealers about that coded language. When expert testimony is proffered from a law enforcement officer, a district court reasonably gauges its reliability by assessing whether it is rooted in "significant law enforcement experience and an application of the case's facts." *See Johnson*, 916 F.3d at 587. That is the precise inquiry the government developed for the court.

Second, even before the district court asked the government to elaborate on Simpson's qualifications, Officer Simpson's vast experience in this area established the reliability of his testimony. District courts need not conduct a *Daubert* hearing where the reliability of the expert's methods may reasonably be inferred from the expert's background. *United States v. Tingle*, 880 F.3d 850, 854 (7th Cir. 2018) (quoting *Kumho*, 526 U.S. at 152). Here, the court could have reasonably found that Simpson's interpretation of the coded language was reliable because it was based on over 20 years of experience in law enforcement. *See id.* (affirming admission of expert testimony without *Daubert* hearing where it was "clear" officer was "properly qualified" based on

16 years with DEA); *Johnson*, 916 F.3d at 587–88 (same where 20-years' experience qualified agent to testify on relationship between drugs and guns).

That brings us to whether the district court abused its discretion in admitting Simpson's testimony as expert evidence under Rule 702. Gardner contends even if Simpson is an expert, the court should not have admitted his testimony because it fell outside of his expertise, which Gardner says is limited to how drugs are distributed, not how language is coded. But in Simpson's more than two decades of drug-enforcement experience, he had decoded phone calls and text messages after having thousands of conversations with coded language. That is why officers with "training and experience in drug-related transactions and crimes are qualified to testify as an expert concerning the practices of people engaged in that type of conduct," including the meaning of "narcotics code words." *See United States v. Farmer*, 543 F.3d 363, 370 (7th Cir. 2008). Thus, the district court reasonably concluded that Simpson's decoding of Gardner's text messages was within his expertise.

Gardner responds that Simpson's knowledge about coded language for selling drugs came from his experiences with *other* investigations—not personal experience investigating *this* case. So, Gardner insists, Simpson's decoding testimony should not have been allowed. But Gardner conflates expert with lay testimony. Where an officer's testimony is based on his personal experience with the defendant during the investigation, it is lay testimony. *United States v. Jones*, 739 F.3d 364, 369 (7th Cir. 2014) (holding that where the witness's testimony is based on his own interactions with the parties in the course of an investigation, then it is based on personal knowledge and constitutes lay testimony). But where, as here, the testimony "is based upon the officer's experience over the years in narcotics investigations, and the officer is providing an opinion based on that experience as to what the code words mean in the present transaction, then it is expert testimony." *Id*. So, while Simpson's testimony might not have been acceptable lay testimony, the district court did not abuse its discretion in admitting it as expert testimony.

Finally, Gardner insists Simpson interpreted innocuous, everyday words that need not be decoded by an expert. But we have held that Rule 702 allows expert officers to "translate drug jargon and code words that might seem entirely innocuous to an untrained jury." *United States v. York*, 572 F.3d 415, 423 (7th Cir. 2009). Even if some of the phrases Simpson interpreted could apply to other non-criminal settings, the court appropriately admitted his opinion that, in this context, the phrases alluded to selling methamphetamine. *See id*. at 424 ("Experts can determine, based on their expertise, that

certain words have drug-related meanings within the context of a single conversation.").

We do not see this case as similar to *United States v. Garcia*, 919 F.3d 489 (7th Cir. 2019), in which the expert's opinion testimony about the defendant's coded messages was uncorroborated. In *Garcia*, unlike the record before us, there was no admission from the defendant, no testimonies from other witnesses, and no direct evidence that the defendant possessed drugs or paraphernalia. Without corroboration, the expert's testimony was determined to be "educated speculation" and not enough to support a guilty verdict. *Id.* at 496. Here, however, Simpson's opinion that Gardner's text messages were about selling drugs is corroborated by Gardner's admission to trying to sell drugs and by the drugs and scales found on his person.

In any case, even if the district court abused its discretion in allowing this testimony, Gardner does not prevail because he does not show that, under these circumstances, the testimony adversely affected his substantial rights. *See Jett*, 908 F.3d at 265. To do so, he needed to show that, had the testimony been excluded, the case against him would have been "significantly less persuasive in the mind of the average juror." *United States v. Saunders*, 826 F.3d 363, 370 (7th Cir. 2016). But here, aside from Simpson's testimony, there was substantial evidence that Gardner possessed and intended to distribute methamphetamine, as he was found with scales and bags of the drug, and he admitted to trying to sell the drug. Moreover, his own counsel told the jury that, based on this evidence, it "was fine" if they convicted on the drug-related charges, essentially conceding the strength of the government's case. On that record, Gardner cannot show that, had Simpson's testimony about the text messages been excluded, the case against him would have been any less persuasive.

AFFIRMED