In the

# United States Court of Appeals

## For the Seventh Circuit

No. 24-2244

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DE'ANDRE L. OWENS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
Nos. 20-cr-30051 and 22-cr-30048— **David W. Dugan**, *Judge.*

ARGUED NOVEMBER 12, 2025 — DECIDED DECEMBER 19, 2025

Before BRENNAN, *Chief Judge*, and ST. EVE and KIRSCH,
*Circuit Judges.*

ST. EVE, *Circuit Judge*. De'Andre Owens sold methamphet-
amine to a confidential informant and then attempted to bribe
him not to testify. A jury found him guilty of distributing a
controlled substance for the former and witness tampering for
the latter. Owens asserts several errors on appeal, but he
waived one and forfeited the remainder. Finding no plain er-
ror, we affirm.

## I. Background

**A. Factual Background**

Around noon on March 15, 2022, Detectives Blake Dukes and Ryan Castleman drove Charlie Anderson, a confidential informant, to Centralia, Illinois, to execute a controlled buy from De'Andre Owens. When they arrived, Detective Dukes searched Anderson, provided him with $275 and a handheld recording device, and instructed that he purchase about nineteen grams of methamphetamine. The detectives then watched Anderson walk to a coffee shop, where Owens was waiting in his car. Owens emerged with a box in his hand, and the two men then walked to the front of Owens's car, which had its hood raised. Detective Dukes observed that they briefly talked, the box moved around a bit, and then the two separated, but he could not see drugs and money change hands. The interaction lasted under a minute. Anderson later explained to Detective Dukes that the box contained the methamphetamine, and Owens instructed Anderson to place the money in the box while retrieving the drugs. Anderson's recording did not capture a clear shot of the exchange.

After the sale, a complication arose: Owens warned Anderson that undercover law enforcement may be in the area and Owens began following him. At this point Detective Dukes called Lieutenant Jamie James, who was stationed outside of Owens's home, to request assistance. The two remained on the phone and alternated in surveilling Anderson—one or the other had sight of him at all times—until he could safely reunite with law enforcement. That ultimately took about ten to fifteen minutes, during which neither Detective Dukes nor Lieutenant James saw Anderson interact with anyone. When Detective Dukes could safely pick Anderson

up, Anderson relinquished the recording device and 18.1 grams of methamphetamine. Detective Dukes then searched Anderson and found no additional drugs or money.

The next month, a federal grand jury returned an indictment against Owens for distributing methamphetamine. While awaiting trial in jail, Owens sought to prevent Anderson from testifying (or at least from doing so truthfully). Beginning in November 2022, Owens had a series of phone calls with Mikel Reed—Owens's girlfriend and, as it happens, Anderson's cousin—in which the two plotted to bribe Anderson. On one call, Owens directed Reed to offer Anderson $10,000 for his silence. Owens later told Anderson, on a phone call orchestrated by Reed, that Owens would help Anderson if Anderson helped Owens. After the call Reed told Anderson he would receive $10,000 for not appearing in court.

## B. Procedural History

In July 2023, a federal grand jury returned a two-count superseding indictment against Owens. The first count charged Owens with distributing five or more grams of methamphetamine while on release,[1] in violation of 21 U.S.C. § 841(A)(1) and (b)(1)(B), and 18 U.S.C. § 3147(1). The second charged him with tampering with a witness, victim, or informant, in violation of 18 U.S.C. § 1512(b)(1) and (j).

Owens pleaded not guilty and went to trial in February 2024. His theory of defense was that Anderson stopped the

---

[1] At the time of the offense, Owens awaited sentencing for a felon-in-possession charge to which he had pleaded guilty. *See* 18 U.S.C. § 922(g)(1). That case was transferred to the court presiding over this one for joint sentencing proceedings. Owens does not challenge any aspect of that offense on appeal.

video recording and purchased the methamphetamine from someone else in between seeing Owens and reuniting with law enforcement.

Detective Dukes testified as the government's first witness at trial. The prosecutor began by establishing his training and experience using confidential informants to conduct controlled buys. Detective Dukes opined as to best practices when doing so, including searching the informant before the buy, monitoring him during it, and then searching the informant again afterward. The prosecution then directed his attention to March 15, 2022. Detective Dukes described his role in, and observation of, Anderson's controlled buy from Owens. Owens did not object to any aspect of Detective Dukes's testimony.

Lieutenant James also testified. He, too, described his role in the controlled buy, particularly his surveillance of Anderson and Owens (in coordination with Detective Dukes) after Owens began following Anderson. Later in the trial, defense counsel pressed Lieutenant James on the possibility that Anderson stopped the video recording and then purchased the methamphetamine in between interacting with Owens and reuniting with Detective Dukes. Lieutenant James rejected the possibility, explaining Anderson "doesn't know how to operate the equipment."

The government also called FBI Special Agent Derek Parker to testify. Special Agent Parker's direct examination began by eliciting his training and experience in using recording equipment for controlled buys. After the defense objected to that testimony's relevance, the court called the attorneys to a sidebar. The prosecutor explained she was putting on Special Agent Parker as an expert; defense counsel responded that the

prosecutor would need to connect his training and experience to the events in question. Because the government was in the process of doing so, the court overruled the relevance objection. The defense then added, "I don't know if [the prosecutor has] established him as an expert yet." The court replied, "I don't know if she has either," and explained "she's going through the process now," to which defense counsel answered, "[o]kay."

Special Agent Parker then resumed his testimony, which proceeded without objection. He explained that, in his experience, only law enforcement can turn the informant's recording on and off, and that it would be unlikely for an informant to have control over that. He noted that the recording system used in Owens's case would operate similarly to that which he uses at the FBI, but he clarified he was not in charge of Anderson's controlled buy. The remainder of Special Agent Parker's direct examination concerned his connection to Owens's case: He was part of the methamphetamine's chain of custody,[2] and he subpoenaed cell carriers for relevant phone records.

Anderson testified too. His account of the date in question corroborated law enforcement's, but he became increasingly agitated during cross-examination, interrupting defense counsel and requiring multiple admonitions from the court. At one point, he invoked his Fifth Amendment right to silence, so the court excused the jury and called a recess. Anderson met with a public defender during the recess and

---

[2] A chemist with the Drug Enforcement Agency testified that the methamphetamine Anderson relinquished to Detective Dukes had a net weight of 18.059 grams and was 100% pure.

decided to proceed with his testimony. When the proceedings resumed, he explained that he walked through his brother's backyard on his way to reunite with Detective Dukes but did not stop or buy drugs from a family member. He also emphasized his inability to control when the recording stopped and started.

Jerad Crawford, a jailhouse informant, testified that while he and Owens were contemporaneously housed in the same jail, Owens admitted details of the drug deal that aligned with law enforcement's testimony. In support of the second count against Owens, Crawford also testified that Owens told him he planned to pay Anderson $10,000 not to testify. Through Officer Jason Herzing, who investigated the possibility of witness tampering, the government introduced the jail calls in which Owens and Reed discussed their plan to bribe Anderson.

The jury found Owens guilty on both counts. The district court sentenced Owens to a term of 360 months' imprisonment for each, to be served concurrently. In reaching that conclusion, the court classified Owens as a career offender due in part to a prior state drug offense. *See* U.S.S.G. § 4B1.1. Owens's counsel had objected to the paragraph of the presentence investigation report (PSR) deeming the career offender enhancement applicable, but she withdrew that objection at the sentencing hearing.

## II. Discussion

On appeal, Owens challenges the court's (1) admission of Detective Dukes's and Special Agent Parker's expert testimony, (2) inclusion of Officer Herzing in the opinion testimony instruction, (3) mishandling of dual-role testimony,

and (4) application of the career offender sentencing enhancement.

## A. Admission of Expert Testimony

Owens first faults the district court for not formally assessing whether Detective Dukes's and Special Agent Parker's expert opinions satisfied the requirements of Federal Rule of Evidence 702, which governs the admissibility of such testimony.

Owens concedes he did not object to Detective Dukes's testimony. He contends, however, that he preserved his Rule 702 argument vis-à-vis Special Agent Parker. We disagree. Owens's lone objection during Special Agent Parker's examination was for relevance, but "[a] party … cannot preserve one specific objection by making a different specific objection in the trial court." *United States v. Echols*, 104 F.4th 1023, 1029 (7th Cir. 2024); *see also United States v. Christian*, 673 F.3d 702, 707–08 (7th Cir. 2012). True, Owens's counsel stated at the ensuing sidebar she was unsure if the prosecutor has "established [Parker] as an expert *yet*," but that is neither an objection to the admissibility of his testimony nor a request that the court test it by Rule 702's standards. Indeed, the court did not understand it as such; it did not overrule or sustain the "objection" but instead explained the government was still in the process of laying its foundation, to which defense counsel replied "[o]kay." Because Owens did not make a Rule 702 (or any) objection when that process concluded or at any other point in Special Agent Parker's testimony, he forfeited it.

Plain error accordingly governs Owens's challenges to both experts. Owens is eligible for relief under that standard only if he demonstrates (1) an error that (2) is plain and

(3) affected his substantial rights. *United States v. Page*, 123 F.4th 851, 864 (7th Cir. 2024) (en banc). If he satisfies those requirements, we may grant relief only "if [we] conclude[] that the error had a serious effect on 'the fairness, integrity or public reputation of judicial proceedings.'" *Greer v. United States*, 593 U.S. 503, 508 (2021) (quoting *Rosales-Mireles v. United States*, 585 U.S. 129, 135 (2018)); *see also Page*, 123 F.4th at 864, 867–68.

The lack of Rule 702 analyses here does not constitute plain error. District courts need not conduct such inquiries sua sponte, and Owens did not challenge the expert testimony on Rule 702 grounds or otherwise dispute the witnesses' qualifications. *See, e.g.*, *United States v. Jett*, 908 F.3d 252, 266 (7th Cir. 2018); *Christian*, 673 F.3d at 711. And Owens does not argue, even briefly, that either witness's testimony would have failed a Rule 702 analysis. That is an understandable omission given their qualifications and the nature of their testimony—Detective Dukes has used an informant for at least one hundred controlled buys, and Special Agent Parker has performed over five hundred controlled buys, at least fifty of which used a cell phone recording device like the one Anderson used. Without persuading us that Rule 702 would have forbidden the testimony in question, Owens cannot prevail. *See, e.g.*, *United States v. Tingle*, 880 F.3d 850, 853–54 (7th Cir. 2018); *United States v. York*, 572 F.3d 415, 421–22 (7th Cir. 2009) (holding that any error stemming from the district court's failure to conduct a Rule 702 analysis was harmless "given [the expert's] qualifications, and no attempt to disparage them here on appeal," such that he "would have easily qualified as an expert had the court conducted the formal Rule 702 analysis").

**B. Officer Herzing's Inclusion in the Opinion Testimony Instruction**

Owens next challenges the district court's opinion testimony instruction, which erroneously included Officer Herzing as a witness "who gave opinions and testimony about drug trafficking." The government concedes Officer Herzing, who testified about his investigation of Owens's witness tampering and through whom the government introduced Owens's jail calls, should not have appeared in this instruction. Our review is again for plain error, though, because Owens did not object below. We note that Owens's cursory arguments on prongs three and four of plain error suggested that the errors undermined his core defense theory—that Anderson manipulated the recording device—and therefore spoke only to the distribution count, whereas Officer Herzing testified only about the witness tampering count.

Even assuming the error is plain, it did not affect Owens's substantial rights. There is no "reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Page*, 123 F.4th at 864 (quoting *Greer*, 593 U.S. at 507–08). The instruction itself, which parroted Pattern Criminal Jury Instruction 3.13, is not prejudicial: it did not refer to Officer Herzing as an expert, and it advised the jury that it did "not have to accept" his opinion and the jury "should judge [his] opinions and testimony the same way you judge the testimony of any other witness." Moreover, the jury had strong evidence, including in Owens's own voice, of witness tampering. It simply is not reasonably probable that any confusion caused by referring to Officer Herzing as a witness "who gave opinions and testimony about drug trafficking" was the difference between acquittal and conviction.

**C. Dual-Role Witnesses**

We turn now to Owens's primary focus on appeal, the district court's handling of dual-role witnesses, which Owens concedes we review for plain error.

A witness who offers both lay and expert testimony at the same trial is a dual-role witness. *See United States v. Thomas*, 970 F.3d 809, 813 (7th Cir. 2020). Such testimony is permitted, but it carries risks. The jury might overweight the expert's fact testimony because it is "smitten by [the] expert's 'aura of special reliability.'" *York*, 572 F.3d at 425 (quoting *United States v. Brown*, 7 F.3d 648, 655 (7th Cir. 1993)). The jury might overweight the expert's opinion testimony on the assumption that "the expert was privy to facts about the defendant not presented at trial." *Jett*, 908 F.3d at 267. And the jury might simply be confused—particularly when it is unclear "whether a given answer was fact testimony regarding the investigation in this case … or expert testimony derived from [the expert's] experience in similar investigations." *United States v. Parkhurst*, 865 F.3d 509, 519 (7th Cir. 2017).

To protect against these risks, we prescribed in *Jett* three precautionary measures to accompany dual-role testimony. First, the government should "present the expert and lay testimony separately" so the jurors may more readily "parse what they should evaluate based on the witness's personal knowledge … from what they should evaluate based on the witness's qualifications, training, and methods." *Jett*, 908 F.3d at 269. Second, after the government lays its foundation and establishes the agent's qualifications, "the district judge should instruct the jury that the testimony it is about to hear is the witness's opinion based on training and experience, not firsthand knowledge, and that it is for the jury to determine

how much weight, if any, to give that opinion." *Id.* at 269–70. Finally, "at the end of the trial, the judge should give an adequate jury instruction that reinforces the jury's duty to weigh fact and expert testimony separately, under their applicable standards." *United States v. Bard*, 73 F.4th 464, 477 (7th Cir. 2023).

Owens sees plain error in the district court's handling of Detective Dukes's and Special Agent Parker's dual-role testimony. It is true that the court did not—on its own initiative, given Owens's failure to request it—adhere to *Jett*'s second and third precautions. But perfect compliance "is not the test for reversal." *Id.* And here, circumstances ameliorating the risks of dual-role testimony and other evidence against Owens defeat his claim of plain error.

Beginning with the mitigating circumstances, numerous safeguards that our cases have identified as relevant accompanied the challenged testimony. The government structured both agents' testimony in accordance with *Jett*'s first prescription: It began both direct examinations by laying its foundation and eliciting the agent's opinion testimony before transitioning to his specific involvement in Owens's case. *See United States v. Jones*, 56 F.4th 455, 484–85 (7th Cir. 2022). Neither party nor the court, moreover, referred to Detective Dukes or Special Agent Parker as an expert, which "substantially reduces any potential prejudice" Owens might have suffered. *United States v. Garrett*, 757 F.3d 560, 569 (7th Cir. 2014). The opinion testimony also was both brief and simple, arguably even straddling the line between expert and lay testimony.

The government further diminished the risk of juror confusion through the prefaces of its questions and clarifying follow-ups, another consideration we have emphasized. *See*

*Jones*, 56 F.4th at 484–85. For example, the prosecutor asked Special Agent Parker to describe "the practice of the FBI or DEA" with respect to an informant's control over the video recording equipment, and after he answered, the prosecutor asked, "The camera system that was operated in this controlled buy, you were not in charge of it; is that a fair statement?" On this key point that went to the heart of Owens's defense, then, the basis of Special Agent Parker's testimony was clear. And when Detective Dukes occasionally gave an answer that ambiguously toed the line between fact and opinion, the government clarified the basis of his response. Effective cross-examination—another safeguard against confusion, *see United States v. Tinsley*, 62 F.4th 376, 385 (7th Cir. 2023)—only further reinforced the distinction between the officers' opinion and fact testimony. Finally, the jury instructions (to which Owens agreed), while failing to note that Detective Dukes and Special Agent Parker gave both fact and opinion testimony, *see Jett*, 908 F.3d at 270, made clear to the jury that the agents provided opinions, that the jury need not accept those opinions, and that it should evaluate them as it would any other testimony.

The evidence against Owens also cuts against a finding of plain error. Owens's defense at trial was that Anderson manipulated the recording equipment. Even putting aside Special Agent Parker's opinion testimony, which as explained above the government presented clearly, Lieutenant James's unchallenged testimony rebutted that possibility. The jury also had extensive evidence of Owens's witness tampering, which "evince[es] his guilty conscience for the underlying crimes." *United States v. Henderson*, 58 F.3d 1145, 1150 (7th Cir. 1995); *see also United States v. Mokol*, 646 F.3d 479, 483 (7th Cir. 2011). Crawford, the jailhouse informant, provided further

inculpatory evidence. Accordingly, Owens cannot satisfy the "difficult" burden imposed by plain error review. *Page*, 123 F.4th at 864 (quoting *Greer*, 593 U.S. at 508).

### D. Career Offender Enhancement

Last is Owens's objection to the district court's application of the career offender enhancement, which applies if among other things "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). One of the prior felonies on which the district court based its application of the enhancement was an Illinois cocaine conviction. Owens contends—contra our decision in *United States v. Ruth*, 966 F.3d 642, 651–54 (7th Cir. 2020)—that conviction does not qualify as a "controlled substance offense" for purposes of the enhancement.

Owens waived this argument. "Waiver occurs when a party intentionally relinquishes a known right," and it "extinguishes error and precludes appellate review." *United States v. Flores*, 929 F.3d 443, 447 (7th Cir. 2019). We find waiver when a defendant affirmatively withdraws an objection to a particular issue. *See, e.g.*, *United States v. Syms*, 846 F.3d 230, 234 (7th Cir. 2017); *United States v. Schrode*, 839 F.3d 545, 555 (7th Cir. 2016). That is just what happened here. Owens objected to the paragraph of the PSR in which the Probation Office found the career offender enhancement applicable, but at the sentencing hearing, his counsel expressly withdrew the objection. That is textbook waiver.

*          *          *

The judgment of the district court is

AFFIRMED.